# In the United States Court of Federal Claims

No. 18-1660

29 January 2021

```
*****************************************
WILLIAM PAUL WANKER,              *
                                  *
              Plaintiff,          *
                                  *      Patent infringement; claim construction;
v.                                *      Markman hearing; plain and ordinary
                                  *      meaning; prosecution disclaimer.
THE UNITED STATES,                *
                                  *
              Defendant,          *
                                  *
*****************************************
```

     *Cabrach J. Connor*, of Connor Kudlac Lee PLLC, with whom was *Jennifer Tatum Lee*, both of Austin, TX, for plaintiff.

     *Brian N. Gross*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Jeffrey Bossert Clark*, Acting Assistant Attorney General, *Gary L. Hausken*, Director, and *Scott Bolden*, of counsel, all of Washington, DC, for defendant.

## CLAIM CONSTRUCTION OPINION AND ORDER

     Plaintiff William Paul Wanker accuses the government of patent infringement. The Court previously denied the government's motion to dismiss alleging the asserted patents are invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter. The Court set a briefing schedule for the parties to resolve all claim construction disputes. The parties were able to resolve the construction of several terms amongst themselves. After briefing on the remaining nine claim terms, the Court held a *Markman* hearing on claim construction. This Claim Construction Opinion and Order construes the disputed terms.

## I.    Background

### A.    Overview

     Plaintiff William Paul Wanker is the "inventor and sole owner" of four U.S. patents: 7,302,429 (the '429 patent); 8,126,779 (the '779 patent); 8,204,797 (the '797 patent); and 9,595,041 (the '041 patent) (collectively, "the asserted patents"). Compl. ¶¶ 2, 10, ECF No. 1. The asserted patents are all part of a single patent family, with the '429 patent serving as the parent application. *See id.* ¶ 39. The '797 and '041 patents are each divisional applications of the '429 patent, while the '779 patent is a continuation-in-part of the '429 patent. *Id.*

The asserted patents relate generally to consumer information systems, providing a method for comparing products and services through the use of various weighting factors to assign each merchant a relative ranking. *See* U.S. Pat. No. 7,302,429 to Wanker, at Abstract. This allows for easier comparison and contrasting of various merchants according to weighted factors specific to the consumer, resulting in the presentation of a ranking relative to other merchants. *See* Compl. ¶ 49. Plaintiff commercializes technology covered by the asserted patents through his company, Legit Services Corporation, to "design[], manufacture[], and sell[] online software solutions to aid product and service purchasing analysis using selection criteria with variable weighting factors." *Id.* ¶ 9.

The government uses the Past Performance Information Retrieval System ("PPIRS"), a web-based enterprise application for gathering, processing, and displaying data regarding the performance of entities and organizations supplying goods and services to the United States. *Id.* ¶ 11. Plaintiff alleges various government agencies, including the Department of Defense ("DoD") and General Services Administration ("GSA"), infringe the asserted patents through their use of PPIRS. *See id.* ¶¶ 4, 97, 100. According to plaintiff, "[t]he GSA directs and controls PPIRS." *Id.* ¶ 97. The DoD E-Business Office sponsors PPIRS, which is then "administered by the Naval Sea Logistics Center Detachment Portsmouth." *Id.* ¶ 100. PPIRS is used for "ranking merchants that sell products and services to the United States Government," by "stor[ing] in a database information regarding individual government contractors, the products and services offered by each contractor, and the corresponding contract performance data for each contractor." Compl. ¶¶ 109, 115.

## B.   Procedural History

Plaintiff filed his complaint on 26 October 2018. *See* Compl. The government filed a motion to dismiss on 1 April 2019, alleging the asserted patents are invalid as a matter of law under 35 U.S.C. § 101 for being directed to patent-ineligible subject matter. *See* Defendant United States of America's Motion to Dismiss Under Rule 12(b)(6) ("Gov't's MTD"), ECF No. 11. Following an oral argument on 6 November 2019, the Court denied the government's motion to dismiss. *See* Op. and Order, ECF No. 30. The government subsequently filed its Answer on 30 March 2020. *See* Answer, ECF No. 33.

The parties jointly proposed a claim construction schedule in accordance with the "Order Governing Proceedings – Patent Case" of the Honorable Judge Albright of U.S. District Court for the Western District of Texas (Waco Division). *See* Joint Revised Proposed Schedule Governing Claim Construction, ECF No. 41. Accordingly, the Court issued an order on 9 June 2020 setting a schedule for claim construction proceedings. *See* Order, ECF No. 42. Plaintiff and the government each filed their opening claim construction briefs on 7 October 2020 ("Pl.'s Op. Cl. Constr. Br.," ECF No. 46 and "Gov't's Op. Cl. Constr. Br.," ECF No. 45), responsive claim construction briefs on 21 October 2020 ("Pl.'s Resp. Cl. Constr. Br.," ECF No. 48 and "Gov't's Resp. Cl. Constr. Br.," ECF No. 47), and reply claim construction briefs on 2 November 2020 ("Pl.'s Reply Cl. Constr. Br.," ECF No. 51 and "Gov't's Reply Cl. Constr. Br.," ECF No. 50). The parties filed a joint claim construction statement on 23 October 2020. *See* Joint Cl. Constr. Stmt., ECF No. 49. After providing the parties a preliminary construction for all terms-in-

dispute, the Court held an oral argument on 18 November 2020.  Transcript, ECF No. 54 ("Tr.") at 7:14–15.

### C.    Factual History and Technology

Plaintiff filed the '429 patent, the parent application of plaintiff's asserted patent family, on 11 April 1999.  *See* '429 Patent at Cover Page.  Originally filed as application number 09/290,006, the '429 patent does not claim priority to any previously filed applications.  *See id.* Plaintiff asserts infringement of 61 total claims:  15 claims of the '429 patent, including independent claims 1, 8, 17, and 18; 2 claims of the '779 patent, including independent claim 1; 28 claims of the '797 patent, including independent claims 1, 8, and 9; and 16 claims of the '041 patent, including independent claims 1, 14, 25, and 29.

"The Asserted Patents are directed to an online information system and methods of collecting, processing and analyzing information regarding merchants and the products and services offered to establish a weighting of comparison information."  Compl. ¶ 49.  The merchant information is then presented to the consumer "in the form of a ranking based on multiple, independently definable criteria."  *Id.*

Figure 1, reproduced below, provides an "illustrative block diagram of the comparison shopping system."  '429 Patent at col. 2 ls. 66–67.



*Id.* at fig.1.

The database stores information "relating to products offered by merchants[,] . . . information on the merchants[,] . . . [and] an initial set of weighting factors."  *Id.* at col. 4 ls. 5–8. The server connects the database to the consumer by receiving "queries from consumers' [sic] [] who are located at remote locations and access the server through the internet."  *Id.* at col. 4 ls. 9–11 (reference numerals omitted).  "In response to a query forwarded by the consumer the server requests comparison information from the database relating to both the product specified in the query and the merchants offering the specified product."  *Id.* at col. 4 ls. 29–32.

Additionally, the server "retrieves weighting factor information from the database" and "applies the weighting factor information to the merchant information and the comparison information on the specified product to calculate weighted comparison factors relating to product and merchant information." '429 Patent at col. 4 ls. 33–37.

The weighting factors are "arranged into four categories: product information; merchant's business information; merchant specific information on the specified product; and merchant specific information on the merchant's business history." *Id.* at col. 4 ls. 48–52 (reference numerals omitted). The weighted comparison factors are "summed to an aggregate score for each merchant." *Id.* at col. 4 ls. 40–41. The aggregate score is used to rank the various merchants being analyzed. *Id.* at col. 4 ls. 41–43. The consumer then receives the ranking of merchants from the server "through the internet as a response to the consumer's query." *Id.* at col. 4 ls. 43–45.

Figure 3, reproduced below, shows a "flow diagram illustrating the process of applying the weighting factors to calculate the ranking of merchants." *Id.* at col. 3 ls. 22–24.



'429 Patent at fig.3.

Viewed in connection with Figure 1, Figure 3 illustrates the process beginning with the server's request for comparison information in response to a consumer's query. *Id.* at col. 6 ls. 36–40. "The server checks whether comparison information is available on the product specified in the consumer's query." *Id.* at col. 6 ls. 40–42. If comparison information is not available, the query is returned. *See id.* at fig.3.

When comparison information is available, the "process proceeds [to the next step] where the database [] responds to the server's request by providing the comparison information, including weighting factors." *Id.* at col. 6 ls. 43–46. When comparison information is not available or is insufficient to perform a ranking, the server returns the query to the consumer for modification. *Id.* at col. 6 ls. 53–59. If the information is sufficient to calculate a ranking, the system proceeds to a final series of steps. *Id.* at col. 6 ls. 63–64. This final series of steps: screens merchants not meeting selected criteria via a filter; screens comparison information not common to all surviving merchants; calculates an aggregate score for each merchant as a sum of applied weighting factors; and ranks the merchants based upon their aggregate score. *See* '429 Patent at col. 6 l . 64 – col. 8 l. 14. A "ranking of the merchants who are offering the [specified] goods" is finally returned to the consumer. *Id.* at col. 8 ls. 10–14.

The comparison shopping system disclosed in the asserted patents has "the ability to include information from multiple merchants," which "marked 'a significant improvement over single-vendor systems' in the prior art." Op. and Order at 18 (quoting Plaintiff's Supplemental Response in Opposition to Defendant's Motion to Dismiss Under Rule 12(b)(6) ("Pl.'s Suppl. Resp.") at 18, ECF No. 22). Moreover, at the time of the invention, "many of the prior art systems provided ranking based solely on price or were not customizable," whereas the asserted patents enable "a weighted-factor analysis pre-query" based on multiple weighting factors. *Id.* at 18–19 (quoting Pl.'s Suppl. Resp. at 9). The asserted patents also solve a problem in the prior art "regarding merchants' ability to skew search results in their favor" "by requiring the weighting factors to be 'entered by a consumer.'" *Id.* at 20 (quoting '429 Patent at col. 22 l. 27). In contrast to "prior art systems performing filtering functions after the generation of results," the systems in the asserted patents "provide an online product purchasing system with increased functionality over those available in the prior art." *Id.* at 22.

## D.    Overview of Claims

Plaintiff asserts infringement of claims 1, 2, 5–10, and 14–20 of the '429 patent, with claims 1, 8, 17, and 18 being independent claims; claims 1–6, 8, 13–17, 19, 24, 25, and 29 of the '779 patent, with claim 1, 14, 25, and 29 being independent claims; claims 1 and 2 of the '797 patent, with claim 1 being an independent claim; and claims 1–6, 9, 11–13, 26–29, and 31–36 of the '041 patent, with claims 1 and 9 being independent claims. *See* Gov't's Op. Cl. Constr. Br at 7. Based on the Court's detailed review of the patents, the disputed claim terms appear in the claims as follows:[1]

---

[1] For claim term construction, the Court conducted a full review of the patents for claims containing disputed terms. The Court's review resulted in minor differences of claims here as compared to those in the parties' briefs. *See generally* Pl.'s Op. Cl. Constr. Br. For example, in plaintiff's brief, claims 1, 3, 8, 14, 19, 25, and 29 of the '429 patent include the disputed claim "plurality." *Id.* at 3. The Court, however, recognizes claims 3 and 25 of the '429 patent neither include "plurality" nor are asserted against the government, and the '429 patent does not have a claim

| Disputed Term | Claims Disputed Term Appears in |
|---|---|
| "plurality" | claims 1, 8, 17, and 18 of the '429 patent<br>claims 1, 3, 8, 14, 19, 25, and 29 of the '779 patent<br>claims 1 and 2 of the '797 patent<br>claims 1–3, 6, 9, 11–12, 26–27, 32–34 of the '041 patent |
| "category" | claims 1 and 15–18 of the '429 patent<br>claims 8 and 19 of the '779 patent<br>claims 1 and 2 of the '797 patent<br>claims 6, 11–12, and 32–34 of the '041 patent |
| "configured to" | claims 9, 29, 31–32, 34, and 36 of the '041 patent |
| "merchant comparison information" and "product comparison information" and "stored comparison data" | claims 1, and 17–18 of the '429 patent<br>claims 1, 4, 8, 14–15, 19, 25, and 29 of the '779 patent<br>claim 1 of the '797 patent |
| "non-opinion data" | claims 1 and 8 of the '429 patent<br>claims 2, 14, and 29 of the '779 patent<br>claims 2 and 26 of the '041 patent |
| "merchant comparison information excluding opinion data and survey result data" and "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person" | claims 17–18 of the '429 patent |

Accordingly, the Court finds claims 1 and 17 of the '429 patent useful for illustrating the disputed claims. Claims 1 and 17 of the '429 patent are reproduced below, with emphasis on each of the disputed claim terms:

> 1. In an online comparison system, a method of ranking merchants, comprising:

---

29. '429 patent at col. 22 ls. 60–63, col. 26 ls. 11–12 (The '429 patent has 25 claims). In subsequent sections, where the Court addresses construction of each term, the Court cites to plaintiff's brief for claims with disputed terms. *See infra* at Sections III–VIII. The difference between the Court's list here, and the parties' briefs, is assumed to be minor typographical errors in brief writing.

entering by a consumer a set of weighting factors prior to receiving query information related to a potential consumer purchase, the weighting factors corresponding to *categories* of *merchant comparison information* data;

receiving the query information related to the potential consumer purchase;

receiving a *plurality* of *merchant comparison information* data for a *plurality* of merchants related to completing the potential consumer purchase, the *merchant comparison information* data for a merchant organized into a *plurality* of *categories*, wherein the *merchant comparison information* data includes *non-opinion data* from at least two *categories* from price category, product availability category, product inventory category, time to deliver product category, payment terms category, payment method category, merchant creditworthiness category, and inventory category information;

calculating a *plurality* of respective merchant data weight resultant values for each merchant of the *plurality* of merchants by multiplying each weighting factor from the entered set of weighting factors by a data value of the *merchant comparison information* data from a corresponding merchant data category;

calculating an aggregate score for each merchant by summing the *plurality* of calculated merchant data weight resultant values;

ranking the merchants based on the aggregate scores to produce a ranking result; and

returning the ranking result to the consumer, the ranking result corresponding to the received query information.

17. A method of ranking merchants in an online comparison system, comprising:

receiving from a consumer a set of weighting factors prior to receiving query information specifying a product or service, the weighting factors corresponding to *categories* of *merchant comparison information*, wherein each said weighting factor is entered as a numerical value and represents the relative importance to be given to corresponding *merchant comparison information* in ranking the merchants;

receiving the query information related to a product or service from the consumer;

retrieving *merchant comparison information* data of merchants offering said product or service from a database, the retrieved *merchant comparison information* data corresponding to the entered query information, the *merchant comparison information excluding opinion data and survey result data*;

calculating a *plurality* of weighted *category* scores for each merchant by, for each of the weighting factors, multiplying the weighting factor by a corresponding data value of the retrieved *merchant comparison information* data to calculate a weighted *category* score, and

summing the weighted *category* scores to calculate a merchant overall score of each merchant;

ranking the merchants according to the calculated merchant overall score of each merchant to produce a ranking result; and

returning the ranking result to the consumer, the ranking result corresponding to the received query information.

'429 Patent col. 22 ls. 25–56, col. 24 ls. 17–46 (emphasis added).

## II.      Construction of Disputed Claim Terms

### A.      Applicable Law

#### 1.      Construction of Claim Terms

"[T]he interpretation and construction of patents claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995). "To construe a claim term, the trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing." *Chamberlain Grp. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008). "[T]he words of a claim 'are generally given their ordinary and customary meaning,'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "There are only two exceptions to this general rule:  (1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

- 8 -

The analysis of any disputed claim terms begins with the intrinsic evidence of record, as "intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Vitronics*, 90 F.3d at 1582.  Additional claims, whether asserted or not, "can also be valuable sources of enlightenment as to the meaning of a claim term." *Phillips*, 415 F.3d at 1314.  This includes consistent use throughout the patent, differences amongst particular terms, and various limitations added throughout the dependent claims.  *Id.* at 1314–15.  The claims do not stand on their own; "they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims."  *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978).  The claims are therefore "read in view of the specification." *Markman*, 52 F.3d at 979.  It is important that limitations from preferred embodiments are not read "into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The Federal Circuit's case law "instructs that different claim terms are presumed to have different meanings." *MicroStrategy Inc. v. Business Objects Americas*, 238 F. App'x 605, 609 (Fed. Cir. 2007) (citing *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed.Cir.2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n. 3 (Fed.Cir.2006) ("[T]he use of two terms in a claim requires that they connote different meanings....")).

## 2. Prosecution History

The prosecution history may serve as an additional source of intrinsic evidence. *Markman*, 52 F.3d at 980.  The prosecution history "consists of the complete record of the proceedings before the [United States Patent and Trademark Office ("USPTO")] and includes the prior art cited during the examination of the patent."  *Phillips*, 415 F.3d at 1317.  The prosecution history "represents an ongoing negotiation between the [US]PTO and the applicant, rather than the final product of that negotiation."  *Id.*  This results in the prosecution history often "lack[ing] the clarity of the specification," making it "less useful for claim construction purposes."  *Id.*  After considering all intrinsic evidence of record, the court has discretion to consider sources of extrinsic evidence, such as dictionaries, treatises, and expert and inventor testimony, if the court "deems it helpful in determining 'the true meaning of language used in the patent claims.'"  *Id.* at 1317–18 (quoting *Markman*, 52 F.3d at 980).  While sometimes helpful, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Id.* at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed Cir. 2004) (internal quotation marks and citations omitted)).

"Prosecution disclaimer 'preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution.'"  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)).  Federal Circuit caselaw "requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable" in order to apply the principles of prosecution disclaimer.  *Id.* (quoting *Omega Eng'g*, 334 F.3d at 1325–26).

"[W]hen the patentee unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,' [the Federal Circuit has] declined to find prosecution disclaimer." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (quoting *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003)).

In *Iridescent Networks, Inc. v. AT&T Mobility, L.L.C.*, the district court construed the term "high quality of service connection," partially relying on the patentee's own statements during prosecution of the parent application. 933 F.3d 1345 at 1349–50 (Fed. Cir. 2019). On appeal, plaintiff contended that "the prosecution history is irrelevant to the claim construction question because there is no clear and unmistakable disavowal of claim scope." *Id.* at 1352. The Federal Circuit rejects this argument, stating "[a]ny explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented." *Id.* at 1352–53 (quoting *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) (internal citation omitted)). The Federal Circuit also notes "the disputed term ["high quality of service connection"] is a coined term, meaning it has no ordinary and customary meaning." *Id.* at 1353. The Federal Circuit holds that courts "may look to the prosecution history for guidance without having to first find a clear and unmistakable disavowal" for terms which do not have ordinary and customary meaning. *Id.*

### B.   Terms Resolved by the Parties

The parties filed a joint claim construction statement on 23 October 2020 indicating they "have reached agreement on certain terms' proposed constructions as detailed in the following table:"

| Claim Term | Agreed-Upon Construction |
|---|---|
| "consumer" | person or entity seeking information on a good or service |
| "merchant" | any provider of a good or service |
| "product" | any good or service which is the subject of commerce |

Joint Claim Construction Statement, ECF No. 49 at 1–2.

### C.   Disputed Terms

The Court will construe the disputed terms in the following order:

| No. | Term |
|---|---|
| 1 | "merchant comparison information" "stored comparison information" |
| 4a | "non-opinion data" |
| 4b | "merchant comparison information excluding |

| | opinion data and survey result data" / "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person" |
|---|---|
| 2 | "plurality" |
| 3 | "category" |
| 5 | "configured to" |

The term numbering is adopted from the parties' Joint Claim Construction Statement chart. *See* Exhibit A of Joint Claim Construction Statement, ECF No. 49-a. Term #4 in the parties' joint statement includes three terms: "non-opinion data," "merchant comparison information excluding opinion data and survey result data," and "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person." *Id.* at 2–3. The parties dispute whether "non-opinion data" has the same meaning as "merchant comparison information excluding opinion data and survey result data" / "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person." *Id.* The Court labels "non-opinion data" as term #4a, and the other two terms as term #4b. The disputed terms discussed in this order follows the same sequence agreed during the *Markman* hearing, as earlier terms build into later terms. *See* Tr. at 7:1–8:24.

## III.   Disputed Claim Term #1:  "Merchant Comparison Information" / "Stored Comparison Information"[2]

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary<br><br>Alternatively, "information used to compare products or merchants"[3] | "the actual data on the merchant or the product" |

Plaintiff lists this disputed term in the following claims:  claims 1 and 17–18 of the '429 patent; claims 1, 13, 14, 24, and 29 of the '779 patent; and claims 1 and 2 of the '797 patent. *See* Pl.'s Op. Cl. Const. Br. at 8. For example, claim 1 of the '429 patent recites "entering by a consumer a set of weighting factors prior to receiving query information related to a potential consumer purchase, the weighting factors corresponding to categories of *merchant comparison information* data." '429 Patent at 22:27–30 (emphasis added).

### A.   Parties Arguments

---

[2] The parties jointly list "product comparison information" along with "merchant comparison information" and "stored comparison data" as one term in dispute. *See* Exhibit A of Joint Claim Construction Statement, ECF No. 49-a, at 1. Plaintiff lists claims 1 and 17–18 of the '429 patent, claims 1, 13, 14, 24, and 29 of the '779 patent, and claims 1 and 2 of the '797 patent to include this term. *See* Pl.'s Op. Cl. Const. Br. at 8. During oral argument, parties clarified the term "product comparison information" does not appear in the alleged claims. Tr. at 27:12–28:6. Accordingly, the Court is not construing "product comparison information."

[3] Plaintiff argues no construction is necessary for this term if the Court finds (1) comparison information includes weighting factors; and (2) comparison information does not include prior purchaser feedback and survey results. Pl. Op. Cl. Constr. Br. at 8. Plaintiff does not state in the opening brief why the alternate construction is "information used to compare products or merchants" but simply states its construction "naturally aligns with the nature and use of the recited comparison information and data." *Id.* at 10.

Plaintiff states "[t]here are two aspects to the parties' dispute: (1) whether comparison information includes only actual data and excludes weighting factors; and (2) whether 'actual data' limits the comparison information by type or source," or more specifically, "does comparison information include prior purchaser feedback and survey results?"  Pl.'s Op. Cl. Constr. Br. at 8.  Plaintiff argues comparison information should not exclude weighting factors or prior purchaser feedback and survey results.  *See id.*  The government characterizes the parties' dispute as "whether the terms . . . [are] limited to data specific to a particular merchant or product or rather encompasses more generally any information used for comparison."  Gov't's Op. Cl. Constr. Br. at 12.

### 1.     Whether "Actual Data" Limits the Comparison Information by Type or Source

Plaintiff alleges "actual data" in the government's construction limits the comparison information by type or source.  *See* Pl.'s Resp. Cl. Constr. Br. at 6 ("[A]pplying the Government's construction to 'Banking History and Credit Information 261' [in Fig. 2E] suggests that the 'actual data' underlying a merchant's credit rating or length of credit accounts is required to meet the claim limitation.").  According to plaintiff, the specification describes comparison information as:

> The comparison information retrieved from the database includes information relating to the merchant and information relating to the product specified in the query, as well as weighting factors to be applied to this information to produce a ranking or evaluation of each merchant's offering of the product.

Pl.'s Resp. Cl. Constr. Br. at 6 (citing '429 Patent at col. 6 ls. 48–53).  Figs. 2A-2G illustrate "examples of comparison information items."  *Id.* (citing '429 Patent at col. 14 ls. 48–49).  Plaintiff cites Fig. 2E as an example to show the government's "interpretation imposing such a requirement [of actual data] on comparison information is inconsistent with the intrinsic record."  *Id.* at 6–7.  According to plaintiff, "applying the [g]overnment's construction to 'Banking History and Credit Information 261' [in Fig. 2E] suggests that the 'actual data' underlying a merchant's credit rating or length of credit accounts is required to meet the claim limitation" of "merchant comparison information."  *Id.* at 6.

The government emphasizes its construction "only requires that the data be specific to the particular merchant or particular product, excluding only general data used in the comparison process."  Gov't's Resp. Cl. Constr. Br. at 2.  The government argues the specification provides "specific examples . . . of 'merchant comparison information data'" and "identifies these types of 'merchant comparison information data' as 'specific' to the product or merchant."  Gov't's Op. Cl. Constr. Br. at 12 (citing, e.g., '429 Patent at col. 5 ls. 33–35 (identifying price and payment options as "merchant *specific* information") (emphasis original)).  The government's reply brief contends it "has never alleged, nor does its proposed construction impose any requirement," to limit the type or source of "merchant comparison information."  Gov't's Reply Cl. Constr. Br. at 2.

####        2.        **Whether Comparison Information Includes Only Actual Data and Excludes Weighting Factors**

Plaintiff contends the specification "explicitly described [weighting factors] as part of the comparison information." Pl.'s Op. Cl. Constr. Br. at 9 (citing '429 Patent at col. 6 ls. 34–53 ("the database (10) responds to the server's request by providing the comparison information, including weighting factors, to the server")).  Plaintiff cites Table 1 of the '429 Patent as providing "examples of weighting factors used in comparing and ranking merchants."  Pl.'s Resp. Cl. Constr. Br. at 7 (citing *429 Patent at col. 8 ls. 15–16). Plaintiff objects to the government's reliance on prosecution history for construing the claim, because "[patentee's] explanation during prosecution did not define or otherwise effect a disavowal of claim scope." *Id.* at 4.  According to plaintiff, patentee's prosecution statement was to distinguish prior art: "the prior art relied on professional 'expert' opinions or reviews," whereas in patentee's invention, "[t]he merchant comparison information data is the actual data on the merchant or their product or services." Pl.'s Op. Cl. Constr. Br. at 9 (citing Request for Continued Examination under 37 C.F.R. §1.114 for U.S. Application No. 09/290,006 (Issued as U.S. Pat. No. 7,302,429) Dated 25 August 2004 ("the 25 August 2004 RCE of the '429 patent") at 7); also *see* Pl.'s Resp. Cl. Constr. Br. at 4–5.  Plaintiff states the patentee "stressed the meaning of 'merchant comparison information' as used in the specification and in so doing did not express a clear and unmistakable disavowal of claim scope." Pl. Resp. Cl. Constr. Br. at 4.  The relevant prosecution history cited by plaintiff is reproduced below:

> The Application is quite clear, as demonstrated by the excerpt of the Specification reproduced above, that weighting factors represent the relative importance of a category of merchant comparison information data. These weighting factors are multiplied against merchant comparison data to calculate a weighted comparison value. *The merchant comparison information data is the actual data on the merchant or their product or services*. . . . These weighted comparison values are then summed to calculate a merchant aggregate score. Represented as a formula:
>
> aggregate score = (weighting factor 1) (merchant data from category 1) + (weighting factor 2) (merchant data from category 2) + .... + (weighting factor N) (merchant data from category N)
>
> Rewriting this formula in a cleaner format:
>
> Merchant Score = $WF_1$ x (Data 1) + $WF_2$ x (Data 2) + ... + $WF_3$ x (Data 3)

*Id.* at 5 (emphasis added) (citing the 25 August 2004 RCE of the '429 patent at 7).

Plaintiff's reply brief contends the specification supports both scenarios when "weighting factors" are or are not a part of "merchant comparison information."  Pl.'s Reply Cl. Constr. Br.

at 2.  Plaintiff agrees "weighting factors" that are "stored weighting factors," i.e., "historical settings by a consumer that can be re-used," are excluded from "merchant comparison information." *Id.*  Plaintiff, however, argues "the specification provides support for rejecting the Government's negative limitation," as "[i]n addition to storing merchant and product information, 'the database stores an initial set of weighting factors.'" *Id.* (citing '429 Patent at col. 4 ls. 7–8.).

The government contends the patentee distinguished "merchant comparison information" from "weighting factors" in the following prosecution statement:

> Thus, the Office Action's contention that weighting factors may be
> entered is factually incorrect, as the only values that may be
> entered on the cited pages of BizRate.com are grades which ARE
> NOT equivalent to weighting factors. The grades entered in
> BizRate.com are a form of merchant comparison information,
> and not a form of weighting factor. The grades are a form of data
> on the merchant, however, subjective, and represent a reviewers
> [sic] subjective opinion on that aspect of a merchant.

Gov't Resp. Cl. Constr. Br. at 3 (citing the 25 August 2004 RCE of the '429 patent at 13).  The government further argues the patentee "defined and explained the relationship between 'weighting factors' and 'merchant comparison information'" citing the same portion in the prosecution history as plaintiff. *Id.* (citing the 25 August 2004 RCE of the '429 patent at 7 ("The merchant comparison information data is the actual data on the merchant or their product or services.")).

The government asserts the language of claim 17 of the '429 patent distinguishes between "weighting factors" and "merchant comparison information." *Id.* at 4.  Claim 17 recites "receiving from a consumer a set of weighting factors," "retrieving merchant comparison information data . . [sic] from a database," and "multiplying the weighting factor by a corresponding data value of the retrieved merchant comparison information data." *Id.* (citing '429 Patent at col. 24 ls. 19–36).  The government alleges "the patent clearly distinguishes between 'weighting factors' and 'comparison information'" by teaching:

> In response to a query forwarded by the consumer the server
> *requests comparison information* from the database relating to both
> the product specified in the query and the merchants offering the
> specified product. The server *also retrieves weighting factor
> information* from the database.

*Id.* at 5 (citing '429 Patent at col. 4 ls. 29–33) (emphasis original).

The government alleges there are ample disclosures "within the specification that distinguish between weighting factors and comparison information."  Gov't Reply Cl. Constr. Br. at 3 (citing, e.g., '429 Patent at col. 4 ls. 34–37 ("The server applies the weighting factor information to the merchant information and the comparison information on the specified

product to calculate weighted comparison factors relating to product and merchant information.")).  The government argues plaintiff wrongly relies on Table 1 to support its contention, as "Table 1 itself contains examples of various types of comparison information that each can have a weighting factor associated with them." *Id.* at 4 (citing '429 Patent col. 7 l. 18 – col. 13 l. 47).  The government further explains "the calculation of the aggregate score using the stored merchant weighting factors" demonstrates weighting factors are not part of the merchant comparison information.  *Id.* at 4 (citing '429 Patent col. 18 ls. 22–24, col. 19 ls. 1–6) (explaining "the system applies the weighting factors to the corresponding comparison information" and "[t]he weighting factors, represented as percentage values reflecting the respective contribution of the corresponding weighting factor data, are multiplied by their corresponding comparison information item").

Regarding plaintiff's argument against the government's reliance on prosecution history to construe this term, the government agrees the patentee's statement does not constitute a "clear and unmistakable disavowal," thus "the Court need not apply the doctrine of prosecution history disclaimer to construe the term."  *Id.* at 5.  The government argues, however, it should be allowed to rely on prosecution history in interpreting the term because "the prosecution history is relevant as it illustrates the precise invention claimed."  *Id.* at 5–6 ("Accordingly, it is entirely appropriate to 'look to the prosecution history for guidance without having to first find a clear and unmistakable disavowal.'" (quoting *Iridescent Networks, Inc. v. AT&T Mobility, L.L.C.*, 933 F.3d 1345 at 1355 (Fed. Cir. 2019))).

## B.     Analysis

### 1.     The Court's Preliminary Construction

Before the *Markman* hearing, the Court provided the parties with the Court's preliminary construction.  Tr. at 7:4–8.  In reaching the preliminary construction, the Court considered both parties' claim construction briefs and all referenced materials in full.

The specification does not explicitly define "merchant comparison information."  Claim 1 provides "merchant comparison information" data includes data from "at least two categories from price category, product availability category, product inventory category, time to deliver product category, payment terms category, payment method category, merchant creditworthiness category, and inventory category information."  '429 Patent at col. 22 ls. 37–43.  The specification characterizes information data in these categories as "merchant specific information."  *See id.* at col. 5 ls. 33–35, 47 (identifying price and payment options as "merchant specific information"); *id.* at col. 5 ls. 62–64 (identifying time in business as "merchant specific information"); *id.* at col. 6 ls. 26–32 (identifying merchant's service rating and response rating as "merchant specific information").  Additionally, the specification discloses the invention uses four categories of comparison information: product information; merchant's business information; merchant specific information on the specified product; and merchant specific information on the merchant's business history. *See id.* at col. 4 ls. 46–52.

The government construes this term as "the actual data on the merchant or the product."  Gov't's Op. Cl. Constr. Br. at 11.  The government's proposed construction emphasizes

"merchant comparison information" / "stored comparison information" need to be specific to the particular merchant or particular product, "excluding only more general data used in the comparison process." Gov't's Resp. Cl. Constr. Br. at 2; *see also* Gov't's Op. Cl. Constr. Br. at 12. The government's construction language is based on patentee's prosecution statement "[t]he merchant comparison information data is the actual data on the merchant or their product or services." Gov't's Op. Cl. Constr. Br. at 12 (citing the 25 August 2004 RCE of the '429 patent at 7).

Based on the claim language and the specification, the Court's preliminary construction adopted the government's position that construction of this term "requires that the data be specific to the particular merchant or particular product." Gov't's Resp. Cl. Constr. Br. at 2. The Court's preliminary construction also incorporated the language "merchant specific information" contained in the specification over the government's proposed language included from the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("[P]rosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."). The Court's preliminary construction further adopted the government's position that this term should not be construed to encompass "weighting factors." *See* Gov't's Resp. Cl. Constr. Br. at 3. Accordingly, the Court proposed to the parties the term "Merchant Comparison Information" /"Stored Comparison Information" is construed as "merchant or product specific information not including weighting factors."

At the commencement of the *Markman* hearing, the government agreed to the Court's preliminary construction in full. *See* Tr. at 26:2–4; 28:14–17. Plaintiff agreed to the language "merchant or product specific information" but contended the term does not exclude "weighting factors." *See* Tr. at 11:6–15; 15:10–16:6. Accordingly, after reviewing the Court's proposed preliminary construction, the only dispute between the parties was whether "merchant or product specific information" includes "weighting factors." *See* Tr. at 16:1–6; 28:17–25.

## 2.      The Court's Final Construction

To support the argument "weighting factors" are a part of "merchant comparison information," plaintiff relies on certain specification language which implies "weighting factors" are included in information retrieved from the database in response to a user's query. *See* Pl.'s Op. Cl. Constr. Br. at 9; *see also* Tr. at 11:21–12:12. Plaintiff also asserts the invention has two operation mechanisms, including one where "weighting factors" are a part of "merchant or product specific information." *See also* Tr. at 18:15–22; 24:21–25:1 ("I believe [the specification] shows . . . that the term ["merchant comparison information"] does not exclude that, and depending upon the implementation allows for ["weighting factors"] to be included in ["merchant comparison information"] or not, depending upon the implementer.").

Plaintiff argues the specification "explicitly described [weighting factors] as part of the comparison information." Pl.'s Op. Cl. Constr. Br. at 9 (citing '429 Patent at col. 6 ls. 34–53 ("the database (10) responds to the server's request by providing the comparison information, including weighting factors, to the server")). During oral argument, plaintiff focused on the following specification language:  "[t]he comparison information . . . includes information

relating to the merchant and information relating to the product specified in the query, as well as weighting factors to be applied to this information . . . ." Tr. at 16:7–16; '429 Patent at col. 6 ls. 37–54. Plaintiff reads the language as mandating "weighing factors" to be a part of "comparison information." *See* Tr. at 16:20–17:2.

The specification language cited by plaintiff states comparison information includes three components: "information relating to the merchant," "information relating to the product," and "weighting factors to be applied to this information." '429 Patent at col. 6 ls. 37–54. The first two components of comparison information are merchant specific or product specific information, and the third component, "weighting factors," are values to be applied to "merchants specific or product specific information." The specification language separates "weighting factors" from "information relating to the merchant" and "information relating to the product." Accordingly, a plain reading of the specification language does not support plaintiff's contention "weighting factors" are a part of "merchant or product specific information."

Plaintiff also cites Table 1 of the specification to demonstrate "weighting factors" are a part of "merchant comparison information." *See* Tr. at 13:1–10. Table 1 "shows examples of weighting factors used in comparing and ranking merchants." '429 Patent at col. 8 ls. 15–16. For example, "time in business" is one of the weighting factors listed in Table 1 under the category of "history." *Id.* at cols. 7–8. Plaintiff argues the specification discloses "time in business" is an example of merchant specific information used in the invention as comparison information, thus the weighting factor of "time in business" in Table 1 is merchant specific information. Tr. at 13:5–6. Plaintiff's argument, however, is not supported by the specification. The specification teaches Table 1 is used in step (309) of the invention, "where the weighting factors are applied to the comparison information." '429 Patent at col. 7 l. 16 – col. 8 l. 8 ("Step (309) produces an aggregate score for each merchant which is the sum of the weighting factors applied to the relevant category of comparison information corresponding to the weighting factor. Examples of weighting factors . . . are discussed in greater detail below in connection with Table 1."). While plaintiff is correct "time in business" is merchant specific information, *see id.* at col. 5 ls. 62–64 ("FIG. 2E illustrates examples of merchant specific information . . . including time in business."), the weighting factor of "time in business" is a *value* corresponding to the merchant specific information of "time in business," instead of being a *part of* merchant specific information.

Patentee's statements made during patent prosecution also support "weighting factors" as values to be applied to corresponding "merchant or product specific information." *See supra* Section III(A)(2) for the relevant prosecution history describing the use of weighting factors in calculating merchant scores. As explained in the prosecution history, weighting factors "represent the relative importance of a category of merchant comparison information data." *Id.* The invention operates by multiplying a weighting factor of a category with the corresponding merchant data in that category to produce an aggregate score for each category, followed by adding all categories' aggregate scores to have a Merchant Score for that merchant, and then ranking merchants based on their Merchant Scores. *See id.* Patentee created a formula to represent how the invention works, which shows "weighting factor 1" and "merchant data from category 1" are two numbers to be multiplied together. *See id.* Accordingly, the prosecution

history does not support plaintiff's argument that "weighting factors" are a part of "merchant or product specific information."

As discussed *supra* in Section III(A)(2), plaintiff contends the specification supports both scenarios where comparison information does or does not include "weighting factors." *See* Pl.'s Reply Cl. Constr. Br. at 2. Plaintiff supplemented this position during oral argument by asserting the invention has two operations: one is the mechanism presented by patentee during prosecution, and the other a multi-tier mechanism where one group of weighting factors are applied to another group of weighting factors. *See* Tr. at 18:15–16 ("So weighting factors can be used in more than one way."); 19:2–5 ("And that [embodiment] gives an indication there that you can use weighting factors to modify other weighting factors, if you will, in a multitiered comparison by having weighting factors as a form of comparison of each.)"; 24:21–25:1 ("I believe [the specification] shows . . . that the term ["merchant comparison information"] does not exclude that, and depending upon the implementation allows for ["weighting factors"] to be included in ["merchant comparison information"] or not, depending upon the implementer.").[4] According to plaintiff, "weighting factors" are a part of "merchant or product specific information" in the second operation. *See id*.

Unlike the first operation method which has ample support and discussion in the specification and prosecution history, plaintiff cannot specify sufficient intrinsic evidence teaching the second method.[5] Plaintiff does not contend there are two types of "weighting factors." *See* Tr. at 24:7–17. Plaintiff alleges the invention encompasses two operation mechanisms, including one where "weighting factors" are a part of "merchant or product specific information." *See* Tr. at 18:15–16; 19:2–5; 24:21–25:1. Regarding this second operation, however, plaintiff does not cite specific intrinsic evidence. *See* Tr. at 24:7–17. Additionally, plaintiff agrees "merchant or product specific information" is a proper construction of the term "Merchant Comparison Information" / "Stored Comparison Information." *See* Tr. at 11:6–15; 15:10–16:6. Even assuming the invention has a second operation method in which one "weighting factor" is applied to another "weighting factor," both weighting factors are still values corresponding to a category of "merchant or product specific information." A weighting factor cannot be "merchant *specific*" or "product *specific*" when it is a value being applied to one category of information from *every* merchant or product.

C.   **Court's Construction**

---

[4] During oral argument, when asked if the invention functions as "multiplying weighting factors with corresponding merchant data to receive a number for each category and then adding all categories together," counsel for plaintiff stated: "[s]o weighting factors can be used in more than one way. They can be used as comparison information, and they then are also or can also be used as the items that - - where you do this multiplication and then resulting summing. So you can have those weighting factors as something that can be an input to the comparison or as input by virtue of the comparison information." Tr. at 17:22–18:22.

[5] During oral argument, when asked whether the specification supports two scenarios "where weighting factors are or are not included in merchant comparison information," plaintiff's counsel relied on language in column 6 of the '429 patent and Table 1 in column 8 of the '429 patent. Tr. at 24:7–17. As discussed *supra*, the Court finds the specification at column 6:37–54 and Table 1 are not sufficient to prove "weighting factors" are a part of "merchant comparison information."

As agreed by the parties during the *Markman* hearing, "Merchant Comparison Information" / "Stored Comparison Information" should be construed as "merchant or product specific information." The only dispute between the parties is whether "merchant or product specific information" includes "weighting factors." *See* Tr. at 11:1–6; 28:17–25. Intrinsic evidence, including the claim language, the specification, and the prosecution history, demonstrates "weighting factors" are not a part of "merchant or product specific information." *Phillips*, 415 F.3d at 1317 ("[W]hile extrinsic evidence can shed useful light on the relevant art, we have explained that it is less significant than the intrinsic record in determining the legally operative meaning of claim language." (internal quotation marks omitted))*; see also C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed. Cir. 2004), *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n,* 366 F.3d 1311, 1318 (Fed. Cir. 2004); *AstraZeneca AB v. Mutual Pharm. Co.,* 384 F.3d 1333, 1337 (Fed. Cir .2004). Accordingly, the Court construes the term "Merchant Comparison Information" / "Stored Comparison Information" to be "merchant or product specific information not including weighting factors."

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary<br><br>Alternatively, "information used to compare products or merchants" | "the actual data on the merchant or the product" |
| **Court's Construction** ||
| merchant or product specific information not including weighting factors ||

## IV.    Disputed Claim Term #4a: "Non-Opinion Data"

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary.<br><br>Alternatively, "objective or statistical information (i.e., not subjective judgments like 'expert evaluations')"[6] | "factual data or information that excludes data based on survey information, opinion information, evaluation ratings by another entity or person, or weights entered by an entity or person other than the consumer" |

Plaintiff lists this disputed term in the following claims: claims 1 and 8 of the '429 patent, claims 2, 15, and 26 of the '041 patent, and claims 2, 14, and 29 of the '779 patent. Pl.'s Op. Cl. Constr. Br. at 10. For example, claim 1 of the '429 patent recites "wherein the merchant comparison information data includes *non-opinion data.*" The '429 patent at 22:37–38 (emphasis added).

As discussed *supra* in Section II(C), the Court split Term #4 in the parties' Joint Claim Construction Statement into Term #4a and Term #4b. During the *Markman* hearing, the parties agreed to the Court's approach of construing Term #4a and Term #4b as two discrete terms. *See* Tr. at 36:12–22.

---

[6] Plaintiff argues the term should include statistical information and does not need to be construed, but plaintiff does not state in the opening brief regarding why the alternate construction is "objective or statistical information (i.e., not subjective judgments like 'expert evaluations')." Pl.'s Op. Cl. Constr. Br. at 10.

A.      **Parties' Arguments**

The parties dispute whether "non-opinion data" has the same meaning as "merchant comparison information excluding opinion data and survey result data" / "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person" (the latter two collectively "the terms excluding opinion data").  *See* Exhibit A of Joint Claim Construction Statement, ECF No. 49-a at 2–3.  Plaintiff disagrees with the government's "one-size-fits-all" construction for the three terms, arguing the same construction for all three terms "improperly rewrites the claims."  Pl.'s Resp. Cl. Constr. Br. at 13.  Plaintiff does not dispute all three limitations were added during prosecution to "distinguish the present claimed invention from the opinion systems of [prior art]."  *Id.*  Plaintiff, however, asserts the amendments should be applied to each claim differently as demonstrated by patentee's statement during prosecution.  *Id.* at 14 (citing Response to Office Action for U.S. Application No. 09/290,006 (Issued as U.S. Pat. No. 7,302,429) Dated 18 April 2005 ("the 18 April 2005 ROA of the '429 patent") at 9–10).  Plaintiff argues "[the patentee's] claim amendments added substantially different limitations to clarify a fundamental distinction over the prior art expressed in various different claims having different scope, [which] manifest the inventor's intent to claim different inventions using different language resulting in claims having different scope."  *Id.* at 15.

Plaintiff contends the term "non-opinion data" does not need to be construed, or, alternatively, means "objective or statistical information (i.e., not subjective judgments like 'expert evaluations')."  Pl.'s Op. Cl. Constr. Br. at 10.  Plaintiff disputes the meaning of "survey information" and objects to the government's exclusion of "survey information" from non-opinion data.  *Id.*  Plaintiff maintains non-opinion data should not exclude survey information, because the patent and prosecution history distinguish "survey information" from "opinion data." *See id.*  Plaintiff cites the language of claims 17 and 18 of the '429 patent as "mak[ing] clear that survey result data and opinion data are two different things."  *Id.* at 10–11 (citing '429 Patent at cols. 24:29–34 and 25:1–3) (claim 17 reciting "merchant comparison information *excluding opinion data and survey result data*;" and claim 18 reciting "merchant comparison information *excludes information obtained from surveys and information specifying the opinion of a person*.").  Plaintiff contends the specification "describes 'prior purchaser and consumer feedback information (274),' [which is a type of survey information], as comparison information supplied by third parties."  *Id.* at 11 (citing '429 Patent at col. 6 ls. 11–25).  Plaintiff asserts, based on prosecution history, opinion data means "'expert' opinions (i.e., professional reviews) such as those that were substituted for 'needs, priorities, and preferences' of the consumer in [prior art], while "[s]urvey information, however, does not include so-called expert opinions." *Id.* at 11–12.

Plaintiff alleges the government's construction excludes embodiments of the specification.  Pl.'s Resp. Cl. Constr. Br. at 17.  According to plaintiff, usage of survey information and evaluation rating by another are within the scope of the claims and are embodied in the specification:  "Figure 2G describes an exemplary set of 'merchant specific information collected by third parties' including 'merchant service rating 281,' and 'history of customer

complaints 283,'" and "'boycott information 285,'" and Figure 2F "describes 'prior purchaser and consumer feedback information' as a type of comparison information." *Id.*

Plaintiff argues the government wrongly applies prosecution history disclaimer in its construction because "[t]he prosecution history does [not] reflect statements of unambiguous surrender of claim scope." *Id.* at 15.  According to plaintiff, "survey result data and information obtained from surveys are explicitly excluded in '429 claims 17 and 18," but these exclusions are only for claims 17 and 18 of the '429 patent and "should [not] be read into 'non-opinion data.'" *Id.* at 16.  Plaintiff asserts the prosecution history distinguishes between opinion information and survey information. *Id.* (citing the 18 April 2005 ROA of the '429 patent at 9 ("the claims have been amended to specifically recite merchant data in a manner that could not be interpreted to cover survey information, opinion information, or 'evaluation ratings.'")).  Plaintiff maintains "the distinction of [prior art from the current claims] was based upon how survey information was used (and manipulated) exclusively [in the prior art] rather than the fact that survey information was used [in the prior art but not included in the current claims]." *Id.*  Plaintiff further explains in its reply brief how the patentee distinguished prior art, BizRate and Geller, during prosecution:  "BizRate used only opinion data for ranking," and "Geller used only 'expert evaluation ratings' to generate a rank, not 'actual information.'"  Pl.'s Reply. Cl. Constr. Br. at 7 (citing Request for Continued Examination under 37 C.F.R. §1.114 for U.S. Application No. 09/290,006 (Issued as U.S. Pat. No. 7,302,429) Dated 22 January 2007 ("the 22 January 2007 RCE of the '429 patent") at 7–8).  According to plaintiff, "neither of these distinctions [between prior art and the current claims] ruled out using transparent, reliable survey data. Where [patentee] intended to exclude all survey data, he explicitly claimed it (in '429 claims 17 and 18)." *Id.*

The government's construction primarily relies on the prosecution history of the '429 patent.  *See* Gov't's Op. Cl. Constr. Br. at 19–23.  The government argues the requirement of "factual data or information" reflects patentee's statement made during prosecution to distinguish prior art:  "patentee argues 'there is a qualitative difference between asking an *opinion of another person* who will provide their opinion of your needs and preferences,' *i.e.* the system disclosed in [prior art], and 'actually being able to check *facts* and weight the importance of facts to make an objective determination according to a buyer's own priorities,' *i.e.* the alleged invention of the Asserted Patents." *Id.* at 19.

The government construes "non-opinion data" as having the same scope as "merchant comparison information excluding opinion data and survey result data" / "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person" in view of patentee's statements during prosecution of the '429 patent.  *See id.* at 18–19.  In particular, the government alleges the patentee "repeatedly and expressly" excluded "survey information, opinion information, evaluation ratings by another entity or person, or weights entered by an entity or person other than the consumer" from all the three terms.  *Id.* at 20.  The government cites the following prosecution statements to support its position:

| Prosecution History | Patentee's Statements (all emphasis original from the government's brief) |
| --- | --- |

| The 18 April 2005 ROA of the '429 patent at 9. | Applicant amended the claims "[t]o clarify this distinction over the Geller reference and the Bizrate.com refences," that the recited merchant data did not "cover *survey information, opinion information, or 'evaluation ratings*.'" |
|---|---|
| The 18 April 2005 ROA of the '429 patent at 11. | "As specified in the claims (as amended), data of a merchant specifically excludes opinion data and *weights entered by a second person*." |
| The 18 April 2005 ROA of the '429 patent at 8. | distinguishing Geller because it multiplies the consumer-selected weight by a "product *evaluation rating*," which is "a number entered by a second person . . . , which expresses the 'expert's [sic] opinion on how well the product fits a desired attribute or answers a question." |
| The 22 January 2007 RCE of the '429 patent at 7–8. | distinguishing Bizrate.com because it "actually refers to opinions of previous customers or staff held regarding the price they paid or their opinion on availability of the product" rather than "the use of actual price or other nonopinion [sic] data in the ranking of merchants." |
| The 22 January 2007 RCE of the '429 patent at 9. | distinguishing Geller because "the *evaluation rating* represents the expert's opinion' [sic] on what the consumer needs or wants, and does not correspond to actual information on the product." |
| Response to Notice of Non-Compliant Amendment for U.S. Application No. 09/290,006 (Issued as U.S. Pat. No. 7,302,429) Dated 4 June 2007 ("the 4 June 2007 Response of the '429 patent") at 19. | distinguishing Bizrate.com because it relied on ratings and evaluations from customers or Bizrate.com staff in the ranking process, rather than "the use of actual price or other nonopinion [sic] data in the ranking of merchants." |
| The 4 June 2007 Response of the '429 patent" at 21. | "The *evaluation rating* represents the expert's opinion on what the consumer needs or wants, and does not correspond to actual information on the product." |

*Id.* at 20–21 (emphasis in original).

The government asserts non-opinion data cannot encompass survey information, because patentee added the limitation of "non-opinion data" during prosecution to "distinguish the present claimed invention from the opinion systems of BizRate.com," and BizRate is a reference patentee described as "us[ing] customer satisfaction *surveys* as the foundation of a business reputation system that it presents to buyers." *Id.* at 23 (citing the 18 April 2005 ROA of the '429 patent at 9–10; the 22 January 2007 RCE of the '429 patent at 8–9) (emphasis original). According to the government, patentee amended the claims during prosecution to distinguish the

prior art in a way that meant the claims "could not be interpreted to cover *survey information*, opinion information, or 'evaluation ratings.'" *Id.* (emphasis in original) (internal citation omitted). The government also argues the patentee expressly distinguished survey response data from "objective information" by referencing them as two separate terms. *Id.* at 23–24 (citing the 25 August 2004 RCE of the '429 patent at 10 ("This example uses both objective data (price and time to delivery) and survey response data (ease of return rating) for merchant comparison information data."). The government claims plaintiff's construction would improperly encompass BizRate.com which patentee sought to distinguish, as "patentee specifically characterized Bizrate.com as using opinion data because of its use of consumer feedback." Gov't's Resp. Cl. Constr. Br. at 12–13.

The government argues "patentee did not distinguish Bizrate [sic] because of how the survey information was used, but rather because survey information is in itself opinion data." Gov't's Reply Cl. Constr. Br. at 15. The government also contends its reliance on prosecution history to construe the terms "does not implicate prosecution history disclaimer." *Id.* at 15–16. According to the government, "[t]he term 'opinion data' does not have a generally agreed-upon definition, and the specification never uses, much less discusses, the words 'opinion' or 'non-opinion,'" thus the government is relying on "the prosecution history, and patentee's own explanations of the terms, to understand the meaning of the claim language." *Id.* at 16. The government further notes patentee relies on the wrong Response in its argument: "[p]laintiff cites to the patentee's August 30, 2004 Request for Continued Examination for its characterization of the distinction over Bizrate [sic], but the relevant amendments adding the limitations, and accompanying argument, were not made until patentee's April 21, 2005 Response." *Id.* (internal citation omitted).

According to the government, the Federal Circuit has repeatedly noted "the claims of the patent need not encompass all disclosed embodiments." Gov't's Reply Cl. Constr. Br. at 17 (citing e.g., *TIP Sys., L.L.C. v. Phillips & Brooks/Gladwin, Inc., 52*9 F.3d 1364, 1373 (Fed. Cir. 2008) ("Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed.")). The government alleges "[p]laintiff's reliance on *Sandisk Corp. v. Memorex Prods., Inc.* is misplaced" because this decision "addressed the exclusion of *preferred embodiments*, not the exclusion of any embodiments generally." *Id.* (citing *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005)) (emphasis original). The government argues "Figures 2F and 2G are described merely as 'examples' of merchant comparison information that may be used, and are not preferred embodiments." *Id.* (internal citation omitted).

## B.    Analysis

### 1.    The Court's Preliminary Construction

Before the *Markman* hearing, the Court provided the parties with the Court's preliminary construction. Tr. at 7:9–17. In reaching the preliminary construction, the Court considered both parties' claim construction briefs and all referenced materials in full.

The government proposes "non-opinion data" is construed to be "factual data or information that excludes data based on survey information, opinion information, evaluation ratings by another entity or person, or weights entered by an entity or person other than the consumer." Gov't's Op. Cl. Constr. Br. at 18–19. The government argues the requirement of "factual data or information" reflects patentee's statements during prosecution to distinguish prior art. *See id.* Plaintiff's reply brief agrees "non-opinion data" should be factual data or information. *See* Pl.'s Resp. Cl. Constr. Br. at 17. Accordingly, the Court's preliminary construction adopted the government's construction as "non-opinion data" is "factual data or information" with certain exclusions.

The parties' claim construction briefs focus their dispute on whether "survey information" should be excluded from "non-opinion data." Plaintiff argues neither the specification nor the prosecution history supports excluding "survey information" from "non-opinion data." *See* Pl.'s Resp. Cl. Const. Br. at 15–17. The government asserts "survey information" should be excluded because patentee distinguished the prior art by removing usage of "survey information" from the claim scope. *See* Gov't's Op. Cl. Constr. Br. at 19. The Court's preliminary construction adopted plaintiff's position that "survey information" should not be excluded from "non-opinion data."

The Court's preliminary construction for this term was "factual data or information that excludes data based on opinion information, evaluation ratings by another entity or person or weight[s] entered by an entity or person other than the consumer." Tr. at 7:13–17. The Court's preliminary construction adopted the government's proposed language but removed "survey information" from the list of exclusions.

At the commencement of discussing this term during the *Markman* hearing, plaintiff proposed to clarify "weights entered by an entity or person other than the consumer" as "*fixed* weights entered by an entity or person other than the consumer." Tr. at 55:10–13. The government accepted the plaintiff's proposed change to "*fixed* weights entered by an entity or person other than the consumer." Tr. at 55:21–56:9. Plaintiff agreed to the revised preliminary construction, "factual data or information that excludes data based on opinion information, evaluation ratings by another entity or person, or *fixed* weights entered by an entity or person other than the consumer," in entirety. *See* Tr. at 56:9–12. The government agreed to the language of the Court's revised preliminary construction. *See* Tr. at 38:9–16; 55:21–56:2. The government, however, insists "survey information" should be excluded from "non-opinion data." *Id.* Accordingly, after reviewing the Court's proposed preliminary construction, the only dispute between the parties is whether "non-opinion data" excludes "survey information."

## 2. The Court's Final Construction

### a. Embodiments in the Specification

The parties dispute whether "survey information" should be excluded from "non-opinion data." *See* Tr. at 38:9–16; 56:13–15. The government argues "survey information" cannot be included in "non-opinion data" because patentee distinguished "survey information" from "non-opinion data" during prosecution to overcome the prior art. *See* Gov't's Op. Cl. Constr. Br. at

20–21. Plaintiff alleges a construction excluding "survey information" from "non-opinion data" improperly eliminates embodiments disclosed in the specification. Pl.'s Resp. Cl. Constr. Br. at 17.

There is little guidance from the specification regarding the scope of "non-opinion data" as the specification neither defines nor explains what "non-opinion data" is. Indeed, the term "non-opinion data" does not appear once in the specification. Certain embodiments included in the specification, though not explicitly delineating the scope of "non-opinion data," help describe what the inventor considers as "non-opinion data" used in the invention. *See* the '429 patent at 14: 48–49 ("Examples of comparison information items are illustrated in FIGS. 2A-2G."). Figure 2F illustrates examples of information "collected or created by third party agencies and institutions including product evaluation and testing by third parties" and "prior purchaser and consumer feedback information." *Id.* at 6:11–25. Figure 2G describes an exemplary set of "merchant specific information collected or created by third party agencies" including "merchant's service rating," and "history of complaints by customers," and boycott information. *Id.* at 6:26–33.

According to plaintiff, Figures 2F and 2G embody the usage of survey information. Pl.'s Resp. Cl. Constr. Br. at 17. If "non-opinion data" is construed to exclude survey information, the construction would improperly exclude the two embodiments of Figures 2F and 2G. *Id.* (citing *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("[a] claim construction that excludes a preferred embodiment . . . 'is rarely, if ever correct.'")). The government does not dispute the embodiments of Figures 2F and 2G use survey information, or its proposed construction would exclude the two embodiments. *See* Gov't's Reply Cl. Constr. Br. at 17. The government argues the exclusion of embodiments in Figures 2F and 2G is not improper because *SanDisk* "specifically addressed the exclusion of *preferred embodiments*, not the exclusion of any embodiments generally," while "Figures 2F and 2G are described merely as 'examples' of merchant comparison information." *Id.* (emphasis original). According to the government, the Federal Circuit has noted "the claims of the patent need not encompass all disclosed embodiments." *Id.* (quoting *TIP Sys., L.L.C. v. Phillips & Brooks/Gladwin, Inc.,* 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed.")). During the oral argument, plaintiff argued all embodiments disclosed in the specification should correspond to the scope of certain claims—patentee would not have included the two embodiments exemplifying usage of survey information in the specification if patentee did not intend the invention to use survey information. Tr. at 62:2–16.

In *TIP Sys., L.L.C. v. Phillips & Brooks/Gladwin, Inc.*, the Federal Circuit construed the terms "earpiece . . . and the mouthpiece . . . permanently extend[ing] out through the front wall" and "mouthpiece ... and ... earpiece extending outward from said housing." 529 F.3d at 1372. TIP contended the district court erred in not construing the terms broadly enough to encompass earpieces and mouthpieces inside the wall. *Id.* TIP asserted the broad construction was supported by an alternative embodiment wherein "aural communication to earpiece and mouthpiece is afforded through a sound transparent section of housing front wall, such as a plurality of small holes." *Id.* The Federal Circuit found "[t]he most natural reading of the claim language . . . is that the earpiece and mouthpiece project out from the wall of the housing," thus

"to construe the claim term to encompass the alternative embodiment in this case would contradict the language of the claims." *Id.* at 1373. Accordingly, the Federal Circuit held "the mere fact that there is an alternative embodiment disclosed in the patent that is not encompassed by district court's claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence." *Id.* (citing *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1359 (Fed. Cir. 2006) (holding the term "rigid" cannot be construed to encompass "semi-rigid," because the "semi-rigid" embodiment in the specification was insufficient to overcome "the conventional usage of 'rigid' by ordinary practitioners in the field" and the prosecution history does not support the broad construction); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108 n.3 (Fed. Cir. 1996) (adopting a narrower construction because patentee dedicated certain embodiments to the public by not claiming them in the initial set of claims submitting to the Patent Office for examination—"this situation is different from that where prosecution history estoppel might apply, when broader claims were submitted and the claims were narrowed during prosecution"); *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562–63 (Fed. Cir. 1991) (finding no literal infringement because patentee did not claim the element in its application)).

*TIP Sys.* does not support the government's proposal to exclude the embodiments of Figures 2F and 2G from "non-opinion data." Rather than the government's generalized assertion "the claims of the patent need not encompass all disclosed embodiments," Gov't's Reply Cl. Constr. Br. at 17, the Federal Circuit's conclusion in *TIP Sys.* is a result of carefully weighing the plain language of the asserted claims and the disclosed embodiments. When a construction is well supported by intrinsic evidence, the Federal Circuit allows the construction to exclude certain embodiments if including the embodiments would contradict a plain reading of the claim language. In other words, excluding embodiments from a claim construction is not a matter of course and requires strong support. The context of *TIP Sys.* is not transferrable to the construction of "non-opinion data." Here, the government fails to allege any specific support to exclude the embodiments of Figures 2F and 2G from the construction "non-opinion data." Unlike *TIP Sys.*, including the embodiments of Figures 2F and 2G, which use survey information as comparison information, does not contradict the plain reading of "non-opinion data."

The government further argues plaintiff's reliance on *SanDisk Corp. v. Memorex Prods., Inc.* is "misplaced" because *SanDisk* "specifically addressed the exclusion of *preferred embodiments*, not the exclusion of any embodiments generally." Gov't's Reply Cl. Constr. Br. at 17 (emphasis original). In *SanDisk*, the district court's claim construction foreclosed possible embodiments in the specification. 415 F.3d at 1285. The Federal Circuit held the district court erred in its claim construction because "[its] speculative treatment of the preferred embodiment is unsupported by the patent specification, not grounded in the record, and contrary to the reading suggested by all parties." *Id.* at 1285 and 1292. The Federal Circuit did not reject the district court's claim construction simply because the excluded embodiments are "preferred embodiments." Rather, the trial court treated those embodiments *speculatively* as the trial court's reasoning was "unsupported by the patent specification, not grounded in the record, and contrary to the reading suggested by all parties." *Id.* at 1285.

The government reads *SanDisk* as specifically addressing exclusion of *preferred embodiments*. *See* Gov't's Reply Cl. Constr. Br. at 17. During oral argument, the government

argued Figures 2F and 2G can be excluded because the specification does not explicitly label them as being "preferred," and "[i]f everything is a preferred embodiment, then nothing is a preferred embodiment." Tr. at 64:9–15. The government misreads *SanDisk* by ignoring the Federal Circuit's reasoning. Based on *SanDisk*, the Court does not need to decide whether the embodiments of Figures 2F and 2G are preferred embodiments, as the Court's claim construction is supported by intrinsic evidence and not treating the embodiments *speculatively*. The specification teaches the embodiments of Figures 2F and 2G are "[e]xamples of comparison information items." The '429 patent at 14:48–49. The parties agree the embodiments of Figures 2F and 2G use survey information in the process of ranking merchants. *See* Pl.'s Resp. Cl. Constr. Br. at 17; Gov't's Reply Cl. Constr. Br. at 17. Additionally, construing the term "non-opinion data" to encompass embodiments of Figures 2F and 2G does not contradict a plain reading of the claim language or any other part of the specification. Accordingly, the term "non-opinion data" can and should be construed to encompass the two embodiments in the specification. *See PSN Ill., LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008) (holding the term "can and should be construed in a way that encompasses the preferred embodiment" because the construction should "neither exclude nor ignore the preferred embodiment").

### b.    Prosecution History

The government asserts the prosecution history "repeatedly and expressly" identified survey information as being excluded from the scope of "non-opinion data." Gov't's Op. Cl. Constr. Br. at 20. According to the government, patentee added the limitation of "non-opinion data" during prosecution to distinguish the claims from "the opinion systems of BizRate.com." *Id.* at 23. Plaintiff contends the government's characterizations of the prosecution history errs in at least two aspects. First, the primary distinction of the current invention from the prior art is "how survey information was used (and manipulated) exclusively [in the prior art] rather than the fact that survey information was used [in the prior art]." Pl.'s Resp. Cl. Const. Br. at 16; *see also* Tr. at 59:14–18. Second, patentee's prosecution statements should not be treated as disclaiming the claim scope encompassing using survey information. Pl.'s Resp. Cl. Constr. Br. at 15.

### i.    Prior Art

"Non-opinion data" first appeared in the prosecution history in the patentees' response dated 18 April 2015 to a non-final Office Action. Patentee amended claim 1 as:

> 1. (Amended Three Times) In an online comparison system, a method of ranking prospective merchants comprising:
> receiving information related to a potential consumer purchase;
> receiving a plurality of merchant comparison information data for a plurality of merchants capable of completing the potential consumer purchase, the merchant comparison information data for a merchant organized into a plurality of categories, <u>wherein the merchant comparison information data</u>

> includes *non-opinion data* from at least two categories from: price
> category . . . .

The 18 April 2005 ROA of the '429 patent at 2 (emphasis added) (Underlined language was
added by patentee for the first time in prosecution.).  The amendment was prompted by the
Examiner's non-final Office Acton issued on 16 November 2004 ("November 2004 Office
Action"), in which the Examiner cited BizRate and Geller as rendering the pending claims
obvious.  *See* November 2004 Office Action at 6–7.  Patentee distinguished Geller by
characterizing it as a "knowledgebase" system, which "relies upon experts who have entered
information about what the[y] perceive a consumer would find relevant."  The 18 April 2005
ROA of the '429 patent at 6–7.  Patentee described Geller as "teach[ing] using opinion
information, in the form of expert 'evaluation ratings,'" and BizRate as teaching "reliance on
survey response data."  *Id.* at 9.  Patentee stated "[t]o clarify this distinction over the Geller
reference and the BizRate.com reference, the claims [1, 8, 17, and 18] have been amended to
specifically recite merchant data in a manner that could not be interpreted to cover survey
information, opinion information, or 'evaluation ratings.'"  *Id.*

    The government asserts construing "non-opinion data" to include "survey information"
would lead to the claim scope improperly encompassing BizRate.  Gov't's Resp. Cl. Constr. Br.
at 12–13.  The government's conclusion is premised on the assumption the use of "survey
information" is the only difference between patentee's invention and BizRate. This assumption,
however, is not supported by prosecution history.  If "non-opinion data" does not contain
"survey information," patentee would have successfully removed BizRate as prior art against
claims 1 and 8 by amending them to recite "non-opinion data."  In contrast, the Examiner
maintained the same obviousness rejection against claims 1 and 8 based on BizRate in view of
Geller in the Office Action issued subsequent to patentee's amendments.  *See* Final Office
Action of the '429 Patent Dated 22 August 2006 at 9.  Moreover, the Examiner recognized
BizRate differs from patentee's invention as "BizRate does not explicitly teach the steps of
calculating a respective merchant data weight resultant value . . . ."  November 2004 Office
Action at 6.  During oral argument, counsel for plaintiff also explained the invention differs from
BizRate in more aspects:  BizRate does not "disclose weighting factors" or apply weighting
factors to its use of opinion or non-opinion data;  users cannot change any setting in BizRate as
all data in BizRate are "preset" by the system; BizRate uses "only opinion data" whereas the
present invention uses factual data.  Tr. at 59:7–18, 69:3.

### ii.        Prosecution History Disclaimer

    Plaintiff contends the government improperly relies on prosecution history to exclude
"survey information," as, allegedly, "the prosecution history does [not] reflect statements of
unambiguous surrender of claim scope justifying these limitations."  Pl's Resp. Cl. Constr. Br. at
15–16 (citing *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir.
2008) ("[A] patentee may limit the meaning of a claim term by making a clear and unmistakable
disavowal of scope during prosecution.").  The government contends it is not advancing a
prosecution history disclaimer argument, rather it merely relies on prosecution history to explain
what the term means.  Gov't's Reply Cl. Constr. Br. at 16.  The government, however, maintains
even if the Court is applying the standard for prosecution history disclaimer, patentee's

statements during prosecution were a "clear and unmistakable disavowal" of the usage of "survey information" in this invention.  *Id.*; *see also* Tr. at 90:2–5.

During the oral argument, the government clarified it was not advancing prosecution history disclaimer as the primary argument but using it in the alternative. [7]  Tr. at 87:17–24. Plaintiff's counsel agreed prosecution history can be used to help explain the term without rising to the level of prosecution history disclaimer.  Tr. at 77:7–12.  Plaintiff's counsel, however, alleged the government's one-size-fits-all construction for Term #4a ("non-opinion data") and Term #4b ("merchant comparison information excluding opinion data and survey result data" / "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person") was effectively arguing prosecution history disclaimer by injecting patentee's surrender made in Term #4b into "non-opinion data."  *See* Tr. at 76:6–23.

Patentee amended independent claims 1, 8, 17, and 18 in the 18 April 2005 response. [8] *See* the 18 April 2005 ROA of the '429 patent at 3–5.  In claims 1 and 8, patentee added "non-opinion data."  *Id.* at 3–4.  In claims 17 and 18, patentee added "merchant comparison information excluding opinion data or survey result data" and "merchant comparison information exclud[ing] information obtained from surveys or specifying the opinion of a person," respectively.  *Id.* at 4–5.  In its remarks accompanying the amendments, patentee referenced the claim amendments as a group.  *See id.* at 9 ("To clarify this distinction over the Geller reference and the BizRate.com reference, *the claims have been amended* to . . . .") (emphasis added); *id.* at 11 ("As specified *in the claims (as amended)* . . . .") (emphasis added).  Nevertheless, patentee stated the scope of claims 1 and 8 is different from the scope of claims 17 and 18 as claims 1 and 8 were "amended to emphasize this distinction between consumer preferences and expert opinions, as well as non-opinion based and opinion-based data."  *Id.* at 10.  In addition to statements where patentee grouped the four independent claims, patentee also addressed the amendment to each independent claim individually:

> For example, Claim 1 has been amended to include "wherein the merchant comparison information data includes non-opinion data from at least two categories from: . . .".

> Claim 14 has been amended to point out that "the merchant data entry values specifying non-opinion data" . . . .

---

[7] During oral argument, when given time to argue with respect to prosecution history disclaimer, the government's counsel stated:

> MR. GROSS: Yes, Your Honor. I think initially, I think you are correct that our position -- I guess I would say it's in the alternative. But our primary position is that this is not prosecution history disclaimer.

Tr. at 87:17–24.

[8] Claims 1, 10, 14, 36, and 39 were then pending independent claims.  Claims 1, 14, 36, and 39 were issued into claims 1, 8, 17, and 18 in the '429 patent.  Claim 10 was canceled during prosecution.  *See* Notice of Allowance for the '429 patent dated 28 August 2007 at 2.

> Claim 36 has been amended to specify that "the merchant comparison information excluding opinion data or survey result data" . . . .

> Claim 39 has been amended to specify that "the retrieved merchant comparison information excludes information obtained from surveys or specifying the opinion of a person" . . . .

The 18 April 2005 ROA of the '429 patent at 9–10.

The government's rationality for its one-size-fits-all construction of Term #4a and Term #4b is that patentee treated claims 1, 8, 17, and 18 collectively during prosecution. *See* Gov't's Op. Cl. Constr. Br at 21. The government, however, ignored the fact patentee deliberately chose to use different language to amend claims 1 and 8 from claims 17 and 18. The government also ignores patentee's statements differentiating the scope of claims 1 and 8 from the scope of claims 17 and 18 as well as addressing the amendment to each independent claim individually. While patentee intended to exclude "opinion data and survey result data" and "information obtained from surveys and information specifying the opinion of a person" in claims 17 and 18, patentee did not do so in claims 1 and 8.[9]

Accordingly, the Court finds the government's reliance on prosecution history for its one-size-fits-all construction not supported by a comprehensive reading of patentee's prosecution statements. As to the government's alternative argument based on prosecution history disclaimer, the Court finds patentee did not make a "clear and unmistakable disavowal" of the usage of "survey information" in claims 1 and 8 by merely referencing claims 1, 8, 17, and 18 collectively in some of its statements. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable.").

### C.    Court's Construction

For Term #4a, the only dispute between the parties after the *Markman* hearing is whether "non-opinion data" excludes "survey information." Excluding "survey information" from "non-opinion data" improperly excludes two embodiments in the '429 patent and is not support by prosecution history. Accordingly, the Court finds Term #4a, "non-opinion data," does not exclude "survey information."

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
| --- | --- |

---

[9] During the oral argument, the government could not explain why patentee deliberately excluded "opinion data" and "survey result data" as two separate terms in claim 17 if survey information is opinion data. *See* Tr. at 46:25–47:8 (the Court asking "if survey information is opinion data, why did the patentee use two different terms in that claim"). The Court is not persuaded by the government's answer that patentee's amendment to claim 1 would not have distinguished BizRate if survey information is separate and distinct from opinion data. *Id.* at 47:9–48:1.

| | |
|---|---|
| No construction necessary<br><br>Alternatively, "objective or statistical information (i.e., not subjective judgments like 'expert evaluations')" | "factual data or information that excludes data based on survey information, opinion information, evaluation ratings by another entity or person, or weights entered by an entity or person other than the consumer" |
| **Court's Construction** | |
| Term #4a: factual data or information that excludes data based on opinion information, evaluation ratings by another entity or person, or fixed weights entered by an entity or person other than the consumer | |

**V.    Disputed Claim Terms #4b-1 and #4b-2:  "Merchant Comparison Information Excluding Opinion Data and Survey Result Data" (#4b-1) / "Merchant Comparison Information Excludes Information Obtained From Surveys and Information Specifying the Opinion of a Person" (#4b-2)**

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary<br><br>Alternatively,[10] plaintiff's proposed construction of merchant comparison information that does not include subjective judgments or survey result data. | "factual data or information that excludes data based on survey information, opinion information, evaluation ratings by another entity or person, or weights entered by an entity or person other than the consumer" |

Plaintiff lists this disputed term in the following claims:  claims 1, 8, and 17–18 of the '429 patent; claims 2, 15, and 26 of the '041 patent; and claims 2, 14, and 29 of the '779 patent as including.  Pl.'s Op. Cl. Constr. Br. at 12.  For example, claim 17 of the '429 patent recites "[a] method of ranking merchants in an online comparison system, comprising . . . retrieving merchant comparison information data of merchants offering said product or service from a database, the retrieved merchant comparison information data corresponding to the entered query information, the *merchant comparison information excluding opinion data and survey result data.*"  '429 Patent at col. 24 ls. 17–46.  Claim 18 of the '429 patent recites "[a] method of ranking merchants in an online comparison system, comprising . . . retrieving the merchant comparison information of merchants . . . wherein the retrieved *merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person.*"  *Id.* at col. 24 l. 47 – col. 25 l. 7.

**A.    Parties Arguments**

Plaintiff objects to the government's inclusion of "factual data or information" in construing Term #4b arguing it conflicts with how the government construes "merchant comparison information:"  the government's proposed construction of Term #4b "implicitly"

---

[10] Plaintiff argues "no construction is necessary" for these two terms, and "should the court find that construction is appropriate," plaintiff argues the construction of these terms should be consistent with the construction of "merchant comparison information" when "merchant comparison information" is used as a "stand-alone term."  Pl.'s Op. Cl. Constr. Br. at 13.

construes the "merchant comparison information" portion of the term to mean "factual data or information," whereas the government proposes the construction of "merchant comparison information," as a stand-alone term, is "the actual data on the merchant or the product." Pl.'s Op. Cl. Constr. Br. at 13.

The government construes Term #4b to have the same meaning as "non-opinion data." *See* Gov't's Op. Cl. Constr. Br. at 18–19. Plaintiff disagrees because "different claim terms are presumed to have different meanings." Pl.'s Resp. Cl. Constr. Br. at 13 (citing *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Org.*, No. 2:17-cv-503, 2019 WL 1922521, at *7 (E.D. Va. Apr. 29, 2019) (quoting *MicroStrategy Inc. v. Business Objects Americas*, 238 F. App'x, 605, 609 (Fed. Cir. 2007))).

The government acknowledges "the language of the terms . . . differs between claims" but argues Terms #4a and #4b should have the same meaning because "the patentee treated the claims as having the same scope in its arguments to the USPTO." Gov't's Resp. Cl. Constr. Br. at 12 (citing *Desper Prods. v. QSound Labs., Inc.*, 157 F.3d 1325 (Fed. Cir. 1998) (holding two claims reciting different terms have the same scope due to the patentee's statement during prosecution despite the differences in plain meaning of the two terms). The government also alleges *BASF* does not support plaintiff's position because *BASF* holds "the presumption of different meanings [can be] rebutted" when the two different terms refer to the same thing. Gov't's Reply Cl. Constr. Br. at 13 (citing *BASF Plant Sci., LP* at *8).

## B.    Analysis

### 1.    The Court's preliminary construction

Before the *Markman* hearing, the Court provided the parties with the Court's preliminary construction. Tr. at 7:18–8:2. In reaching the preliminary construction, the Court considered both parties' claim construction briefs and all referenced materials in full.

Plaintiff proposes the "merchant comparison information" portion of the terms should be construed consistently with "merchant comparison information" as a stand-alone term. Pl.'s Op. Cl. Constr. Br. at 13. The Court agrees the same term should have the same meaning. *Phillips*, 415 F.3d at 1314 ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.") (internal citation omitted). The Court construes the stand-alone term "merchant comparison information" as "merchant or product specific information." *See supra.* Thus, the "merchant comparison information" portion of the terms in the Court's preliminary construction had the same construction of "merchant or product specific information." The Court's preliminary construction also adopted plaintiff's position that the terms are clear and require no construction.

The Court's preliminary construction of Term #4b was plain and ordinary, i.e., "merchant or product specific information excluding opinion data and survey result data" for Term #4b-1 and "merchant or product specific information excluding information obtained from surveys and

information specifying the opinion of a person" for Term #4b-2.[11]  Tr. at 7:18–8:2.  During the *Markman* hearing, the parties agreed Term #4b-1 and Term #4b-2 both are construed to have their plain and ordinary meaning.  *See* Tr. at 75:10–15, 78:16–79:2.  As suggested by the government and agreed by plaintiff, the scope of "opinion data" in Term #4b-1 is construed consistently with Term #4a "non-opinion data."  *Id.* at 80:6–10, 92:16–93:4.  Therefore, the parties have no dispute regarding the scope of Term #4b-1.  *Id*. at 92:25–93:11.

The parties, however, raised a dispute regarding whether Term #4b-2 has the same scope as Term #4b-1. *Id.* at 95:14–96:2.  In particular, the parties dispute whether "opinion data" has an identical scope as "information specifying the opinion of a person."  Tr. at 102:6–13.  Plaintiff contends "information specifying the opinion of a person" is "within the set of opinion data."  Tr. at 92:22–24.  The government maintains "information specifying the opinion of a person is coextensive with opinion data. Those two terms are the same."  Tr. at 95:18–20.

Accordingly, after reviewing the Court's proposed preliminary construction, the only dispute between the parties after the *Markman* hearing is the scope of Term #4b-2, in particular, whether the scope of "information specifying the opinion of a person" is a subset within the scope of "opinion data" or the two terms are identical.  *See* Tr. at 95:16–24, 102:6–16.

## 2.      The Court's Final Construction

### a.      Whether Term #4b Has the Same Scope as Term #4a

During the *Markman* hearing, the parties agreed to the Court's approach of construing Term #4a and Term #4b as two discrete terms.  *See* Tr. at 36:12–22.  As the parties disagree on whether Term #4a and Term #4b have the same meaning, the Court must resolve the dispute as part of claim construction.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman*, 52 F.3d at 976) ("The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'").

Federal Circuit precedent establishes different claims are presumed to have different meanings.  *MicroStrategy Inc.*, 238 F. App'x at 609;  *see also CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG,* 224 F.3d 1308, 1317 (Fed. Cir. 2000), 224 F.3d at 1317 ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."), *Applied Med. Res. Corp. v. U.S. Surgical Corp.,* 448 F.3d 1324, 1333 n. 3 (Fed.Cir.2006) ("[T]he use of two terms in a claim requires that they connote different meanings . . . .").  Based on the plain language of Term #4a and #4b, they are presumed to have different meanings.

---

[11] The Court's preliminary construction sent to the parties before the *Markman* hearing was "merchant specific information excluding opinion data and survey result data" and "merchant specific information excluding information obtained from surveys and information specifying the opinion of a person."  During the *Markman* hearing, the Court clarified with the parties the Court's proposed preliminary construction includes "*merchant or product specific* information."  Tr. at 84:8–85:1.

The government relies on *Desper* to argue different terms can have the same meaning. Gov't's Resp. Cl. Constr. Br. at 11–12 (citing *Desper Prods.*, 157 F.3d at 1336–37). In *Desper,* the district court construed "prior to" to have the same meaning as "following." *Id.* at 1337. The Federal Circuit held the district court's "construction is supported by the written description because this is precisely how the preferred embodiment of the invention works." *Id.* at 1336. In addition, the Federal Circuit agreed with the district court "the prosecution history tips the balance in favor of construing 'prior to' in the same manner as 'following.'" *Id.* at 1337.

*Desper* is not applicable to construction of Terms #4a and #4b. The government does not identify any embodiment in the '429 patent where "non-opinion data" is precisely used in the same way as "merchant comparison information excluding opinion data and survey result data" or "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person." As to the consideration of prosecution history, patentee amended independent claims 1, 8, 17, and 18 in the 18 April 2005 response. *See* the 18 April 2005 ROA of the '429 patent at 3–5. In claims 1 and 8, patentee added "non-opinion data." *Id.* at 3–4. In claims 17 and 18, patentee added "merchant comparison information excluding opinion data or survey result data" and "merchant comparison information exclud[ing] information obtained from surveys or specifying the opinion of a person," respectively. *Id.* at 4–5. Patentee stated the scope of claims 1 and 8 are different from claims 17 and 18 as claims 1 and 8 were "amended to emphasize this distinction between consumer preferences and expert opinions, as well as non-opinion based and opinion-based data." *Id.* at 10. Thus, unlike *Desper,* the prosecution history here "tips the balance in favor of" construing Term #4a differently from #4b.

The government also contends plaintiff's reliance on *BASF* is misplaced because *BASF* held "the presumption of different meanings [of different terms was] rebutted" by two different terms referring to the same thing. Gov't's Reply Cl. Constr. Br. at 13 (citing *BASF Plant Sci., LP* at *8). The claim in *BASF* recites "a seed-specific promoter obtained from flax" following by a recitation of second sequence "non-native to *said* flax seed-preferred promoter." *BASF Plant Sci., LP* at *8 (emphasis original). The *BASF* court found the claim language indicates "seed-specific promoter" and "seed-preferred promoter," "although different terms, refer to the same thing." *Id.* The *BASF* court thus held "the presumption of different meanings is rebutted" by the claim language using "said." *Id.* The situation in *BASF* does not resemble Terms #4a and #4b here—the claims do not contain such a word as "said" connecting Terms #4a and #4b for them to refer to the same thing.

### b.    Construction of Term #4b-2

During the *Markman* hearing, the parties agreed both terms within Term #4b have their plain and ordinary meaning. *See* Tr. at 75:10–15; Tr. at 78:16–79:2. The parties, however, cannot agree on the scope of "merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person." In particular, the parties dispute whether "information specifying the opinion of a person" has the identical scope as "opinion data" in Term #4a or is a subset within "opinion data." *Id.* at 95:16–24. The government characterizes the dispute as "a quintessential *O2 Micro* question of what is the scope of the claims." *Id.* at 86:2–6. The Court therefore must resolve the parties' dispute on the scope

- 34 -

of "information specifying the opinion of a person" versus "opinion data." *O2 Micro,* 521 F.3d at 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.")

As discussed *supra* in Section IV(B)(2)(b)(ii), the government's one-size-fits-all construction for all three terms in Term #4a and #4b is not supported by intrinsic evidence. Nevertheless, plaintiff's claim construction briefs also treated the two terms within Term #4b to have the same meaning. During the *Markman* hearing, the Court's preliminary construction led the parties to dispute whether the two terms within Term #4b should have identical scope. The parties agree both terms of Term #4b should have their respective plain and ordinary meanings. *See* Tr. at 75:10–15; Tr. at 78:16–79:2. The parties also agree on the scope of "merchant comparison information excluding opinion data and survey result data." Tr. at 93:7–21. Thus, whether the two terms within Term #4b have the same scope depends on whether the plain and ordinary meaning of "information specifying the opinion of a person" is the same as "opinion data."

As agreed by the parties during oral argument, the scope of "opinion data" in Term #4b-1 is construed consistently as in Term #4a "non-opinion data." Tr. at 80:6–10, 92:16–93:4. The Court construes "non-opinion data" as "factual data or information that excludes data based on opinion information, evaluation ratings by another entity or person, or fixed weights entered by an entity or person other than the consumer." *See supra.* Given the parties' agreement on the consistent reading for "opinion data" between Term #4a and Term #4b-1, "opinion data" in Term #4b-1 encompasses "data based on opinion information, evaluation ratings by another entity or person, or fixed weights entered by an entity or person other than the consumer." If the Court accepts the government's view that "opinion data" has the identical scope as "information specifying the opinion of a person," "information specifying the opinion of a person" would also encompass "data based on opinion information, evaluation ratings by another entity or person, or fixed weights entered by an entity or person other than the consumer." This construction contradicts a plain reading of the language, as "evaluation ratings" and "fixed weights" can be entered by either a person or an entity. Accordingly, the scope of "information specifying the opinion of a person" must alternatively be a subset of "opinion data."

The government further maintains, because it construes Term #4b-1 and Term #4b-2 to have the same scope, Term #4b-2 should also exclude "evaluation ratings by another entity or person, or fixed weights entered by an entity or person other than the consumer." Tr. at 78:21–79:1; Tr. at 93:7–21. Plaintiff characterizes the government's contention as a question for infringement, not a question for claim construction. Tr. at 80:22–81:4 (plaintiff's counsel: "If the concern is that the government thinks that we are going to argue on infringement that an evaluation rating by another entity or person is not the opinion of a person, we are not going to do that. I mean, that would not be consistent with the claim language."). The government disagreed and viewed the dispute as "a quintessential *O2 Micro* question of what is the scope of the claims." *Id.* at 86:2–6. The Court determines the scope of Terms #4b-2 is broader than Term #4b-1, as the excluded scope of "information specifying the opinion of a person" in Term #4b-2 is narrower than the excluded scope of "opinion data" in Term #4b-1. Accordingly, the parties' *O2 Micro* question is resolved, and if the parties have disputes on whether a particular feature in the alleged infringing product constitutes "evaluation ratings by another entity or person, or fixed

weights entered by an entity or person other than the consumer" or "information specifying the opinion of a person," that is a question left for future infringement disputes. *See O2 Micro,* 521 F.3d at 1360 (quoting *Markman,* 52 F.3d at 976) ("The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'").

### C.    Court's Construction

By agreement of the parties, Term #4b-1 is construed to have its plain and ordinary meaning, in which the scope of "opinion data" in Term #4b-1 is construed consistently with Term #4a "non-opinion data." The parties also agree Term #4b-2 should be construed to have its plain and ordinary meaning but disagree on whether the scope of "information specifying the opinion of a person" in Term #4b-2 is identical with the scope of "opinion data" in Term #4b-1. The Court resolves the dispute by finding the scope of "information specifying the opinion of a person" is a subset within "opinion data."

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
| --- | --- |
| No construction necessary<br><br>Alternatively, Plaintiff's proposed construction of merchant comparison information that does not include subjective judgments or survey result data. | "factual data or information that excludes data based on survey information, opinion information, evaluation ratings by another entity or person, or weights entered by an entity or person other than the consumer" |
| Court's Construction | |
| Term #4b-1 ("merchant comparison information excluding opinion data and survey result data"):  as agreed by the parties—plain and ordinary, merchant or product specific information excluding opinion data and survey result data, wherein the scope of "opinion data" is consistent with Term #4a "non-opinion data."<br><br>Term #4b-2 ("merchant comparison information excludes information obtained from surveys and information specifying the opinion of a person"):  as construed by the Court—plain and ordinary, merchant or product specific information excluding information obtained from surveys and information specifying the opinion of a person, wherein the scope of "information specifying the opinion of a person" is a subset within "opinion data." | |

## VI.    Disputed Claim Term #2:  "plurality"

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
| --- | --- |
| No construction necessary | "two or more" |

Plaintiff lists this disputed term in the following claims:  claims 1, 3, 8, 14, 19, 25, and 29 of the '429 patent, claims 1 and 2 of the '797 patent, and claims 1–3, 6, 9, 11–12, 15, 26–27, and

32–34 of the '041 patent.[12]  *See* Pl.'s Op. Cl. Constr. Br. at 3.  For example, claim 1 of the '429 patent recites "receiving a *plurality* of merchant comparison information data for a *plurality* of merchants."  '429 Patent at col. 22 ls. 25–56.

## A.    Parties Arguments

Plaintiff contends "[a]lthough the parties do not dispute [plurality's] ordinary meaning," the construction of "plurality" is not its ordinary meaning of "two or more" in view of the context.  Pl's Op. Cl. Constr. Br. at 3 (citing *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1328 (Fed. Cir. 2001) ("[P]lurality, when used in a claim, refers to two or more items, absent some indication to the contrary.") (internal quotation omitted); *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) ("[I]n context, the plural can describe a universe ranging from one to some higher number, rather than requiring more than one item.")).  Plaintiff argues "plurality" in claim 1 of the '429 patent encompasses one or more, as "plurality refers to the plurality of merchants, not a plurality of data for each of the plurality of merchants."  *Id.* at 4. In particular, "the claim does not require multiple sets of data for each merchant."  Pl's Resp. Cl. Constr. Br. at 9.  Plaintiff's reply brief tentatively agrees to the government's construction, because the government's response brief "appears to resolve [patentee's] concern that a strict application of the Government's proposed construction would result in this claim requiring multiple pieces of data from each of the plurality of merchants."  Pl.'s Reply Cl. Constr. Br. at 3.

The government contends "[t]he Federal Circuit has repeatedly held that the plain and ordinary meaning of the term 'plurality' is simply 'two or more'."  Gov't's Op. Cl. Constr. Br. at 15 (citing, e.g., *Helena Labs. Corp. v. Alpha Sci. Corp.*, 274 Fed. App'x 900, 903 (Fed. Cir. 2008) (holding claims reciting a "plurality of stabilizing supports" are not met by product with "at most a single stabilizing support.")).  The government cites the dictionary meaning of "plurality" as "the state of being plural," *i.e.*, "more than one."  *Id.* at 14 (citing, e.g., *Webster's New Collegiate Dictionary* (9th ed. 1984)).  Furthermore, the government argues the patentee intended "plurality" to have a different meaning than "one or more" because patentee amended the claims from "the plurality of products" to "one or more products" during the prosecution of the '041 patent.  *Id.* at 15.

The government alleges plaintiff's construction violates the canon "the same word appearing in the same claim should be interpreted consistently."  Gov't's Resp. Cl. Constr. Br. at 6.  (citing *Digit. Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335 (Fed. Cir. 1998); *Varma v. IBM Corp.*, 816 F.3d 1352 (Fed. Cir. 2016)).  The government also argues, even assuming plaintiff is right about the claim encompassing "receiving only a single piece of merchant comparison information data from each of the plurality of merchants," the term plurality still means two or more.  *Id.* at 6–7 (stating "receiving a single piece of merchant comparison information data from each of two or more merchants would result in receiving two or more pieces of merchant comparison information data").  The government asserts plaintiff's argument is "rewriting the

---

[12] Plaintiff's opening brief lists "plurality" in claims 1–3, 6, 8–9, 11–12, 15–16, 19, 21, 26–27, 32–34 of the '041 patent.  *See* Pl.'s Op. Cl. Constr. Br. at 3.  During oral argument, the government informed the Court the parties had removed claims 8, 16, 19, and 21 from the list of asserted claims after discussion.  Tr. at 103:11–17.

claim to recite 'receiving a plurality of merchant comparison information data for *each of* a plurality of merchants.'" Gov't's Reply Cl. Constr. Br. at 9 (emphasis original).

### B.     The Court's Preliminary Construction

Before the *Markman* hearing, the Court provided the parties with the Court's preliminary construction. Tr. at 8:3–6. In reaching the preliminary construction, the Court considered both parties' claim construction briefs and all referenced materials in full.

The government proposes the term "plurality" should have a plain and ordinary meaning of "two or more." Gov't's Op. Cl. Constr. Br. at 15. Plaintiff agrees to the government's proposed construction provided it does not require "multiple pieces of data from each of the plurality of merchants." Pl.'s Reply Cl. Constr. Br. at 3. Accordingly, the Court proposed to the parties the term "plurality" is construed to have its plain and ordinary meaning of "two or more." Tr. at 8:3–6. During *Markman*, both parties agreed to the Court's proposed preliminary construction in entirety. Tr. at 106:12–15. The parties also agreed "the claim encompasses receiving a single piece of merchant comparison information from each of two or more merchants," but the claim is not read "to require only one category of merchant comparison information." Tr. at 104:16–23, 106:2–5. After reviewing the Court's proposed preliminary construction at the *Markman* hearing, there is no dispute between the parties regarding the construction of "plurality."

### C.     The Court's Final Construction

As agreed by both parties at the *Markman* hearing, the Court construes "plurality" to have its plain and ordinary meaning of "two or more."

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary* | "two or more" |
| **Court's Construction** | |
| Plain and ordinary, "two or more" | |

## VII.   Disputed Claim Term #3:  "category"

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary | "a class or division of similar types of information or comparison data" |

Plaintiff lists this disputed term in the following claims:  claims 1 and 16–18 of the '429 patent, claims 8 and 19 of the '797 patent, and claims 6, 11–12, and 32–34 of the '041 patent.[13] *See* Pl.'s Op. Cl. Constr. Br. at 5. For example, claim 1 of the '429 patent recites "the merchant

---

[13] Plaintiff lists claims 6, 11–12, 19, 21, and 32–34 of the '041 patent as including the term "category" in its opening brief. *See* Pl.'s Op. Cl. Constr. Br. at 5. During oral argument, the government informed the Court the parties had removed claims 19 and 21 from the list of applicable claims after discussion. Tr. at 103:11–17.

comparison information data includes non-opinion data from at least two *categories* from price *category*, product availability *category* . . . ." '429 Patent at col. 22 ls. 37–42.

## A.    Parties Arguments

Plaintiff contends "categories are simply an organization concept that requires no construction or redefinition." Pl.'s Resp. Cl. Constr. Br. at 11.  Plaintiff argues the government improperly injects an "undefined terminology ('similar types' of information)" in its construction, which "practically introduces a qualitative limitation for which the specification provides little guidance." *Id.*  Plaintiff alleges the government misunderstands the nature of the invention as requiring similar types of information in each category.  Pl's Reply Cl. Constr. Br. at 5.  ("[T]he customizable nature of the invention [allows] the consumer [to] categorize information as she pleases.  There is no intrinsic support for a requirement that the consumer's preferences must adhere to a similar/class or division categorization scheme.").

The government contends the term should be given its plain and ordinary meaning. Gov't Resp. Cl. Constr. Br. at 8.  The government identifies the dispute between the parties as "even when the parties agree on 'plain and ordinary meaning,' a dispute can still exist because the parties do not agree on what that meaning is." *Id.* at 8–9 (citing *Holmberg v. United States*, 124 Fed. Cl. 610 (2016)).  The government argues the claim language of various claims in the asserted patent repeatedly demonstrates there is a hierarchy between "comparison information" and "category." Gov't Op. Cl. Constr. Br. at 16–17 (citing, *e.g.*, the '429 patent at col. 22 ls. 35–39 ("the merchant comparison information data for a merchant organized into a plurality of categories, wherein the merchant comparison information data includes non-opinion data from at least two categories")) ("The claim language repeatedly distinguishes between 'comparison information' and 'category,' with the latter being a grouping of values of the former.").  The government also cites the dictionary definition of "category" to support its argument. *Id.* at 18 (citing *American Heritage Dictionary* (2nd College ed. 1982)) ("Dictionaries define the term 'category' as 'a specifically defined division in a system of classification; class.'").

## B.    The Court's Preliminary Construction

Before the *Markman* hearing, the Court provided the parties with the Court's preliminary construction.  Tr. at 8:7–10.  In reaching the preliminary construction, the Court considered both parties' claim construction briefs and all referenced materials in full.

Plaintiff contends the term "category" needs no construction and should be given its plain and ordinary meaning.  *See* Pl.'s Reply Cl. Constr. Br. at 4–5.  The government agrees the term should have a plain and ordinary meaning.  *See* Gov't Resp. Cl. Constr. Br. at 8–9.  The government proposes the plain and ordinary meaning of "category" based on a dictionary definition of "a specifically defined division in a system of classification; class." Gov't Op. Cl. Constr. Br. at 18 (citing *American Heritage Dictionary* (2nd College ed. 1982)).  Plaintiff acknowledges categories are simply "an organization concept," but plaintiff disagrees with the government's construction requiring "similar types of" information in each category.  Pl.'s Resp. Cl. Constr. Br. at 11.  Plaintiff maintains the specification demonstrates the invention is

customizable and does not require placing similar types of information into each category. Pl's Reply Cl. Constr. Br. at 5.

Based on its dictionary definition, the plain and ordinary meaning of "category" does not require "similar types of" information being in one class or division. The government does not specify sufficient intrinsic evidence to support adding "similar types of" information to the plain and ordinary meaning of "category." Moreover, the specification suggests the invention allows placing different types of information into each category. Accordingly, the Court's preliminary construction adopted plaintiff's position; the plain and ordinary meaning of "category" does not require "similar types of" information. The Court's preliminary construction adopted most of the government's proposed language except removing "similar types of."

Before the *Markman* hearing, the Court proposed to the parties the term "category" is construed to have its plain and ordinary meaning, which is "a class or division of information or comparison data." Tr. at 8:7–10. Both parties agreed to the Court's proposed preliminary construction in entirety. Tr. at 107:8–15. After reviewing the Court's proposed preliminary construction at the *Markman* hearing, there is no dispute between the parties regarding the construction of "category."

## C.   The Court's Final Construction

As agreed by parties during the *Markman* hearing, the Court construes "category" to have a plain and ordinary meaning, which is "a class or division of information or comparison data."

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary | a class or division of similar types of information or comparison data |
| **Court's Construction** | |
| a class or division of information or comparison data | |

## VIII.  Disputed Claim Term #5: "configured to"

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary | "programmed to" |

Plaintiff lists the disputed term in the following claims: claims 9, 29, 31–32, 34, and 36 of the '041 patent. Pl.'s Op. Cl. Constr. Br. at 7. For example, claim 9 of the '041 patent recites the limitation "a database *configured to* store (a) data related to a plurality of products and (b) data identifying a plurality of suggested paradigms." '041 Patent at col. 19 l. 40 – col. 20 l. 37.

## A.   Parties Arguments

Plaintiff argues "configured to" requires no construction because the claim language explains the term. Pl.'s Op. Cl. Constr. Br. at 7. Claim 9 of the '041 patent recites a "database configured to store" certain data and a "server configured: [among other things] (a) to receive the stored data . . .; (b) to output, through the internet, to a display screen . . . ; (c) to receive a

- 40 -

selected paradigm . . . from the consumer. . . ."  *Id.* (citing the '041 patent at col. 19 l. 40 – col. 20 l. 37).  Plaintiff contends "[a] person of ordinary skill in the art would understand the system configuration entails data communication that may not require 'programming'" in view of the specification.  *Id.*  (citing the '041 patent at col. 4 ls. 17–20).  Plaintiff objects to the government's construction as "limiting the various forms of 'configured to' … to [a] narrow 'programed to' construction."  Pl.'s Resp. Cl. Constr. Br. at 21.

The government contends the term should be given its plain and ordinary meaning, which is "programmed to."  *See* Gov't's Op. Cl. Constr. Br. at 24–25.  According to the government, "the Federal Circuit has recognized that the plain and ordinary meaning of the term 'configured to' is synonymous with 'made to' or 'designed to,' in contrast to being 'merely capable of' or 'suitable for.'"  *Id.* at 24 (citing *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012)).  The government argues the plain and ordinary meaning of "configured to" in the asserted patents should be "programmed to," as the invention is computer-implemented technology.  *Id.* at 24–25 ("In the context of computers and similar technology, courts have construed the term 'configured to' to mean 'programmed to,' as opposed to being merely capable of perform a task.") (citing, e.g., *Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc., Civ. Action Nos. 4:18-CV-469, 4:18-CV-501, 4:18-CV-519,* 2020 WL 1983087, at *19–*20 (E.D. Tex. Apr. 27, 2020) (construing "configured to" to mean "actually programmed to.")).

### B.      The Court's Preliminary Construction

Before the *Markman* hearing, the Court provided the parties with the Court's preliminary construction.  Tr. at 7:18–8:12.  In reaching the preliminary construction, the Court considered both parties' claim construction briefs and all referenced materials in full.

Plaintiff proposes the term "configure to" needs no construction and should be given its plain and ordinary meaning.  *See* Pl.'s Resp. Cl. Constr. Br. at 19–20.  The government acknowledges both parties agree the term should have a plain and ordinary meaning but contends the plain and ordinary meaning of "configured to" should be "programmed to."  *See* Gov't's Reply. Cl. Constr. Br. at 18.  As the parties agree "configured to" should have its plain and ordinary meaning, the Court's preliminary construction focused on resolving what the plain and ordinary meaning of "configured to" is.

The government relies on a case from the Federal Circuit recognizing the plain and ordinary meaning of "configured to" is synonymous with "made to" or "designed to."  Gov't's Op. Cl. Constr. Br. at 24 (citing *Aspex Eyewear, Inc.*, 672 F.3d at 1349).  In *Aspex Eyewear*, the Federal Circuit construed "adapted to" and found "[i]n common parlance, the phrase 'adapted to' is frequently used to mean 'made to,' 'designed to,' or 'configured to.'" 672 F.3d at 1349 (citing *Webster's Third New International Dictionary* 24 (1968)).  The government further relies on district court cases addressing the term "configured to" in the context of computer technology to construe "configured to" in the present case as "programmed to."  *See* Gov't's Op. Cl. Constr. Br. at 24–25.  The government does not specify intrinsic evidence mandating the invention functions with software programming.  As the government solely relied on case law for its proposed construction and there is no intrinsic evidence to limit the plain and ordinary meaning

of "configured to" to "programmed to," the Court's preliminary construction proposed the plain and ordinary meaning of "configured to" is synonymous with "made to" or "designed to."

During the *Markman* hearing, both parties agreed to the Court's proposed preliminary construction in entirety.  Tr. at 107:18–108:24.  After reviewing the Court's proposed preliminary construction at the *Markman* hearing, there is no dispute between the parties regarding the construction of "configured to."

C.    **The Court's Final Construction**

As agreed by parties during the *Markman* hearing, the Court construes "configured to" to have its plain and ordinary meaning, which is "made to" or "designed to."

| Plaintiff's Proposed Construction | The Government's Proposed Construction |
|---|---|
| No construction necessary | "programmed to" |
| **Court's Construction** | |
| Plain and ordinary, i.e., made to or designed to | |

IX.    **Conclusion**

The disputed terms are interpreted by the Court in this Claim Construction Opinion and Order.  The Court adopts the construction of the terms as set forth herein.  The parties shall file a joint status report **on or before 16 February 2021** to jointly propose a complete schedule for future proceedings.  The Court encourages the parties to contemplate a schedule similar to that of Judge Albright in the United States District Court, Western District of Texas (Order Governing Proceedings – Patent Cases, current version).

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge